958 A.2d 284

**Christopher HUTCHINSON**

v.

**STATE of Maryland.**

**No. 1, Sept. Term, 2008.**

Court of Appeals of Maryland.

Oct. 8, 2008.

Michael R. Malloy, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), for Petitioner/Cross-Respondent.

Cathleen C. Brockmeyer, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen., on brief), for Respondent/Cross-Petitioner.

Argued before HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, JOHN C. ELDRIDGE (Retired, specially assigned) and IRMA S. RAKER (Retired, specially assigned), JJ.

RAKER, J.

This criminal case presents the question of whether petitioner was prejudiced at his trial for rape. The Court of Special Appeals concluded that the trial court erred in permitting the prosecutor to ask petitioner repeatedly on cross-examination whether complainant lied in her testimony and in allowing a lay witness to render an expert opinion, without the State first disclosing in discovery the witness's testimony, that the complainant's injuries were consistent with rape, but held that the errors were harmless. We address only the expert opinion question and shall hold that the error was not harmless beyond a reasonable doubt.

## I.

Christopher Hutchinson was indicted by the Grand Jury for Montgomery County for the offenses of rape in the first and second degree. He was convicted by a jury of second degree rape and the court sentenced him to a term of incarceration of twenty years.

Petitioner's arrest and conviction stem from events that occurred early in the morning on September 26, 2003. Rebecca A. testified at trial that at about three a.m. she was driving

on the Washington D.C. Beltway when her car had a flat tire and she drove onto the roadway shoulder. Petitioner stopped and offered to help her. The two drove their respective cars down the road to a gravel construction area off the exit ramp. After petitioner was unable to change the tire, Rebecca A. got into petitioner's car to go to a nearby gas station where she could call someone to pick her up.

Rebecca A. testified that after she got into petitioner's car, he drove a few feet, put the car in park, and asked for payment. He refused her offer of ten dollars and said he wanted sex. After she said no, he locked the doors and tried to kiss her, which she resisted. He then knocked back the seat and placed his hand on her throat. She testified that he then moved on top of her, hit her in the face, pulled down her pants, and then took out a condom. When she resisted, he punched her and began having intercourse with her. After he got off of her, she managed to escape from the car when he inadvertently unlocked the car doors, and she ran over to a nearby construction trailer. Petitioner drove off and a man who had been working in the trailer called police.

Petitioner's defense at trial was that he did not have sexual intercourse with Rebecca A., and that after he helped her, she consented to sexual contact, but when she changed her mind, he stopped. Petitioner said that after he could not change the tire, Rebecca A. asked for a ride to her home, offered to let him stay at her house and began "coming on" to him. Petitioner and Rebecca A. then began kissing and touching each other. Petitioner admitted to penetrating Rebecca A. digitally, but said that when she changed her mind after a couple of minutes he stopped. Afterwards, petitioner said that she again asked him for a ride home, but he said no, and she swatted him several times and hit him in the eye. He swatted her back, grabbed her and pushed her out of the car, closed the door and left.

There were no eyewitnesses to the alleged incident and petitioner never challenged his presence at the scene of the incident. The primary issue for the fact finder in this case,

therefore, was to make a credibility determination between complainant's and petitioner's version of events.

The State called a forensic nurse examiner, Heidi Bresee, to testify to her physical examination of Rebecca A. following the events. Before Bresee testified, defense counsel objected and the following colloquy occurred:

"[DEFENSE COUNSEL]: Your Honor, in [the prosecutor's] opening statement, he said that the injuries that the alleged victim suffered were consistent with the story that she told. I have not received any kind of expert notice regarding this witness. And I want to make sure that the State is not planning to ask her to expound any kind of an expert opinion.

"[STATE]: I'm not going to have [her], it's not to offer her as an expert. I think based on her training and experience she's going to be able to say that the injuries she observed are consistent with what was described to her. She's not going to render an expert opinion ...

"THE COURT: All right.

"[DEFENSE COUNSEL]: But, Your Honor, any kind of opinion that is based on a person's training, experience, education, that is an expert opinion.... And the State has to give notice regarding that expert opinion so that I can meet it. They have not given any notice in this case and I ask the Court to exclude that.

"THE COURT: The request is denied."

Bresee testified that she conducted a physical examination of Rebecca A. and took samples for testing. She said she observed injuries to Rebecca A.'s jaw, chest, hand, and knee. She performed a gynecological examination and observed injuries in the vaginal area. The State then elicited the following testimony:

"[STATE]: And the injuries that you observed, were they consistent with the disclosure that you had been given?

"[DEFENSE COUNSEL]: Objection[.]

"THE COURT: Overruled.

"[BRESEE]: Yes.

* * *

"[STATE]: Now could you tell, what are those, you said the bruise on the inside of her leg and a bruise on her jaw. Let me ask you abut the bruise on her jaw. Could you tell if that was a recent injury or an old injury?

"[DEFENSE COUNSEL]: Objection.

"[THE COURT]: Overruled.

* * *

"[BRESEE]: It was consistent with her report of being struck recently in the face."

During the State's cross-examination of petitioner, the State asked him numerous times whether the complainant had lied in her testimony.

"[STATE]: So she lied, when she said you punched her and put your hand on her neck, she lied?

"[PETITIONER]: That's correct.

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"[STATE]: When she said that you punched her in the jaw, she lied?

"[PETITIONER]: Yes she did.

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

[STATE]: When she said that you reached over and you hit the lever and put her seat back, she lied?

[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"[PETITIONER]: Yes, she did.

"[STATE]: So you were able to make out with her and kiss her and begin to touch her but you never put her seat back?

"[PETITIONER]: That's correct.

"[STATE]: Okay. So she lied about that?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled.

"[PETITIONER]: Yes, she did.

"[STATE]: And she lied about you saying, you want the ladies and gentlemen of the jury to believe that after meeting you for ten minutes, she wanted you to take her home and she was going to have sex with you?

"[DEFENSE COUNSEL]: Objection.

"THE COURT: Overruled."

As indicated, the jury convicted petitioner of second degree rape. Petitioner noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court agreed with petitioner that the trial court erred in permitting the State to ask petitioner whether the complainant was lying and that the court erred in permitting the forensic nurse to express an opinion based on her training and experience without satisfying discovery procedures required by Maryland Rule 4–263(b)(4). The court held, however, that the errors were harmless.

We granted certiorari to consider the following questions: (1) Did the Court of Special Appeals err by ruling that it is harmless error for a prosecutor to ask the defendant, on cross-examination, whether the complainant had lied in the complainant's testimony?

(2) Did the Court of Special Appeals err by ruling that there could be no prejudice to petitioner where the prosecutor improperly failed to reveal in discovery the expert opinion testimony of a forensic nurse that the complainant's injuries were consistent with her account of the alleged assault and rape?

*Hutchinson v. State*, 404 Md. 152, 945 A.2d 1270 (2008).

Because we shall hold that the Circuit Court erred in permitting the forensic nurse to express her opinion that Rebecca A.'s injuries were consistent with rape and with Rebecca A.'s complaints, and that the error was not harmless beyond a reasonable doubt, we shall reverse. We shall not address the issue of whether the court's error in permitting

the State to ask petitioner repeatedly whether complainant was lying was harmless.

## II.

 The only real issue before this Court is whether the Court of Special Appeals erred in finding that the trial court error's was harmless beyond a reasonable doubt. Petitioner argues that the admission of the forensic nurse's testimony, in violation of the discovery rules, was prejudicial and that the error was not harmless because it deprived him of the opportunity to prepare adequately to cross-examine Bresee about her expert opinion. The error also prevented him from having another expert review the reports of the physical and gynecological exams and the videotape of the gynecological exam in order to refute the assertion that the results were consistent with the complainant's description of the events. The State contends that the trial court's error was harmless because the testimony was merely cumulative of other evidence presented and did not affect the result.

 When this case was tried, Maryland Rule 4–263(b)(4),[1] the rule governing discovery of experts in criminal cases, read as follows:

"(b) Upon request of the defendant, the State's Attorney shall:

---

1. Effective July 1, 2008, the Maryland rules governing criminal discovery were significantly amended. Md. Rule 4–263(d)(8) currently reads as follows:

"Without the necessity of a request, the State's Attorney shall provide to the defense: ...

(8) Reports or Statements of Experts. As to each expert consulted by the State's Attorney in connection with the action:

(A) the expert's name and address, the subject matter of the consultation, the substance of the expert's findings and opinions, and a summary of the grounds for each opinion;

(B) the opportunity to inspect and copy all written reports or statements made in connection with the action by the expert, including the results of any physical or mental examination, scientific test, experiment, or comparison; and

(C) the substance of any oral report and conclusion by the expert."

. . .

(4) Produce and permit the defendant to inspect and copy all written reports or statements made in connection with the action by each expert consulted by the State, including the results of any physical or mental examination, scientific test, experiment, or comparison, and furnish the defendant with the substance of any such oral report and conclusion."

The purpose of discovery is to avoid surprise at trial and to give the defendant sufficient time to prepare a defense. *See Hutchins v. State,* 339 Md. 466, 473, 663 A.2d 1281, 1285 (1995). In the case before us, there is no question as to whether the discovery rule had been violated by the State— the State concedes the error. The only question is whether the error was harmless.

The standard in Maryland for evaluating harmless error was set forth by this Court in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976):

"[W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict."

The standard remains unchanged today. *See Lee v. State,* 405 Md. 148, 174, 950 A.2d 125, 140 (2008); *State v. Baby,* 404 Md. 220, 265, 946 A.2d 463, 489 (2008); *Bellamy v. State,* 403 Md. 308, 332, 941 A.2d 1107, 1121 (2008); *State v. Logan,* 394 Md. 378, 387–91, 906 A.2d 374, 380–82 (2006); *Clemons v. State,* 392 Md. 339, 372, 896 A.2d 1059, 1078–79 (2006).

As in many sexual offense cases, there are no eyewitnesses to the events beyond the complainant and the defendant, and the primary issue for the fact finder is whose version of events is more credible. The forensic nurse's testimony significantly bolstered the credibility of Rebecca A.'s allegations and there-

fore, under the facts and circumstances of this case, could not be deemed harmless error. According to our review of the record, the evidence was not merely cumulative evidence, as argued by the State.

Bresee was the only forensic nurse examiner to testify at trial and the only witness to have performed a gynecological exam on the complainant following the alleged rape. During direct examination by the State, Bresee described the physical and gynecological exam she conducted of the complainant the morning following the alleged incident, as well as the injuries she observed and documented in her examination report. These injuries included not only the facial bruising that the complainant sustained during the incident and that had been described by previous witnesses, but trauma to the vaginal area that was described for the first time from the witness stand. After describing the results of the exam, Bresee expressed the expert opinion that the injuries she observed were consistent with forced sexual intercourse, the primary disputed issue in the case. Bresee's testimony did not repeat the testimony of any of the prior witnesses introduced during the State's case-in-chief. No other witness had testified that the complainant's injuries were consistent with her description of the incident. Moreover, because Bresee conducted a gynecological exam and had particularized knowledge of sexual abuse cases, her testimony may well have been given significant weight by one or more jurors during deliberations.

We are not persuaded beyond a reasonable doubt that Bresee's testimony was merely cumulative evidence and that the Circuit Court's error in admitting Bresee's testimony was harmless.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF CONVICTION AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR A NEW TRIAL. COSTS IN THIS COURT AND THE**

COURT OF SPECIAL APPEALS TO BE PAID BY
MONTGOMERY COUNTY.