4 A.3d 976

**Sean Anthony DOVE**

**v.**

**STATE of Maryland.**

**No. 118, Sept. Term, 2009.**

Court of Appeals of Maryland.

Sept. 21, 2010.

---

728

**732**

Scott M. Swafford, Assigned Public Defender (Arnold & Porter LLP of Washington, D.C.; Brian M. Saccenti, Asst. Public Defender, Maryland Office of the Public Defender, of Baltimore, MD), on brief, for petitioner.

Douglas D. Guidorizzi, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

GREENE, J.

We are asked to determine whether the introduction of evidence at a sentencing hearing, which the State failed to disclose prior to the hearing in violation of Maryland Rule 4–342(d), was a harmless error. In the present case, the State, in an effort to prove that the petitioner, Sean Anthony Dove ("Dove"), was subject to an enhanced sentence under the provisions of Md.Code (2002), § 5–608(c) of the Criminal Law Article,[1] commonly known as the "three strikes rule" for drug-related offenses, introduced a fingerprint card, through the testimony of an expert witness, as substantive evidence of Dove's identity in a previous conviction. Dove made a timely objection to the admission of the fingerprint card based on the State's failure to disclose the card prior to the hearing, in violation of Md. Rule 4–342(d). Notwithstanding, the sentencing judge admitted the fingerprint card as evidence and relied on the fingerprint card in making his finding that the State had proven that Dove was subject to an enhanced penalty. We shall hold that, although the Court of Special Appeals

---

1. Unless otherwise provided, all statutory references are to the Criminal Law Article of the Maryland Code.

properly applied a "harmless error" analysis to the violation of Md. Rule 4–342(d), in the present case, the admission of the fingerprint card was not a harmless error because the card was substantive evidence of a required element under § 5–608(c). Further, the sentencing judge relied on the fingerprint card in determining that the State met its burden of proof under that section. In addition, the fingerprint card was not cumulative evidence of Dove's connection to the prior conviction.

## Facts and Procedural History

Dove was charged in the Circuit Court for Baltimore County with one count of possession of heroin and one count of possession with intent to distribute heroin. A jury returned verdicts of guilty on both counts.

At sentencing, the State sought an enhanced penalty of 25 years' imprisonment without parole pursuant to § 5–608(c). The State asserted that Dove's conviction in the present case was his third qualifying conviction under the statute, or "third strike," and presented evidence at the sentencing hearing to substantiate Dove's two prior qualifying convictions. The State's evidence at the sentencing hearing consisted of the certified records of the alleged prior convictions; the expert testimony of Detective Valentine, who was qualified as an expert in the identification of known inked fingerprints; and the testimony of Jodi Stouffer of the Maryland Division of Correction. Dove contested the accuracy of the records introduced to support the prior convictions and specifically objected to the admission of a fingerprint card used to link Dove's identity to the record of a prior conviction when the State failed to provide notice that the card would be used at the sentencing hearing.[2] Dove also objected to Detective Valen-

---

2. Neither Dove nor the State specifically cited Md. Rule 4–342(d). The sentencing judge, however, did acknowledge Md. Rule 4–342 governed the disclosure requirements prior to sentencing hearings, but did not reference its requirements in ruling on Dove's objection. Although the State admitted to the sentencing judge that it failed to disclose its intent to offer the fingerprint card as evidence, nonetheless the State asserted

tine's references to the fingerprint card in his testimony because the State had not disclosed the cards in discovery. Dove admitted that he received notice of the state's intent to call Detective Valentine as a witness prior to the sentencing hearing. Although the State properly notified Dove that he qualified as a repeat offender subject to an enhanced penalty, the State did not disclose to Dove or his attorney the State's intention to rely on the fingerprint cards.

Through Detective Valentine's testimony, the State presented two certified records of prior convictions, as well as two fingerprint cards, to prove that Dove had two prior convictions for qualifying offenses under § 5-608(c). The State presented the fingerprint card at issue in the present case, identified as State's Exhibit 2 at the sentencing hearing, and asserted that the Baltimore City Police collected the fingerprints from an individual arrested on June 7, 2000. The State asserted that the fingerprint card in question was associated with case number 200202007 from the criminal records of the Baltimore City Circuit Court, in which an individual identified as Sean Anthony Dove was found guilty of possession with intent to distribute heroin on March 19, 2001, receiving a sentence of eight years. Detective Valentine testified that he took inked impressions from Dove while he was in the lock-up and compared the inked impression to those on the fingerprint card in question. According to Detective Valentine, the fingerprints were those of the same person.

Detective Valentine also testified about a second conviction and another set of fingerprints collected during a different arrest. According to Detective Valentine, the fingerprints collected as a result of an arrest on August 31, 2000 also belonged to Dove.[3] The State asserted that the fingerprint

it was not required to disclose the card because Dove did not make a specific request.

3. Dove's counsel did not object to the admission of the fingerprint card relating to the August 31, 2000 arrest, on the basis of the State's failure to disclose its intent to use the card as evidence against Dove. Upon objecting to the admission of the fingerprint card from the June 7, 2000

card in question was associated with a March 19, 2001 conviction for possession with intent to distribute cocaine. Near the conclusion of Detective Valentine's direct testimony, the sentencing judge admitted the fingerprint cards, from both arrests, into evidence.

Following Detective Valentine's cross-examination and redirect examination, and the examination of Jodi Stouffer, the sentencing judge ruled on the State's request for the imposition of a mandatory minimum sentence of 25 years pursuant to § 5–608(c):

> The Court: I have had an opportunity to review all of the documentation. State's Exhibit Number 1 has the person identified as Sean Dove. It gives a date of birth of 12–26–71 and under that 12–26–72. The documents [that] have been introduced as State's Exhibit Number 2 [the fingerprint card in question] and 4 have the same birthdate.

The argument by the State is that it doesn't make any difference what the criminal information says, almost form without substance, has some limited value in this regard: Whether the criminal information was incorrect or not or that they were switched, that is to say whether Page two of the State's Exhibits 1 and 3 were switched or the criminal information alleging that the Defendant was charged with possession with intent [to distribute] heroin and/or cocaine on various dates is not that important in the overall scheme of things for this reason: The documents that have been introduced indicate that on—State's Exhibit Number 1 indi-

---

arrest, Dove's counsel stated that she "ha[d] not seen any prior fingerprints of Mr. Dove from any other source" prior to the sentencing hearing, but did not raise this objection again when the State sought to admit the fingerprint card from the August 31, 2000 arrest. We need not consider whether Dove properly preserved his objection with regard to the fingerprint card from the August 31, 2000 arrest, State's Exhibit 4 at the sentencing hearing, because the State must prove each conviction to establish that Dove was a repeat offender subject to an enhanced penalty under Md.Code (2002), § 5–608(c) of the Criminal Law Article. If the sentencing judge considered the fingerprint card from the July 20, 2000 arrest in violation of Md. Rule 4–342(d), the sentence must be vacated regardless of whether the State properly proved the conviction related to the August 31, 2000 arrest.

cates that on March 19th of 2001, the Defendant pled guilty to possession with intent to distribute, which is a qualifying offense. That document indicates that the charges in the Court were filed on July 20th of 2000.

State's Exhibit Number 3 indicates that on March 19th, 2001, the Defendant pled guilty to possession with intent to distribute heroin. Now, I don't know from this documentation whether or not the charges were amended or there was a clerical error, but certainly the Defendant pled guilty to those charges. And that was filed on October 12th of 2000 which was subsequent to the filing of the charges on State's Exhibit Number 1.

Now, in looking at State's Exhibits 2 [the fingerprint card in question] and 4 as I have already mentioned, *I think that there is sufficient identification information both on the documents themselves and what the detective testified to when he requested specific documents related to specific arrests.* Therefore, I find that although the documents seem somewhat confusing, that upon closer inspection you can understand what circumstances were and especially, and this is important, the Defendant pled guilty to possession with intent to distribute each one of these offenses, drugs, rather, and I don't know, as I said, whether there was an amendment made at the time. But either way, both drugs qualify as a predicate offense. I find as a matter of fact that the State has met its burden beyond a reasonable doubt.

(Emphasis added.)

In accordance with the finding that Dove was a repeat offender pursuant to § 5–608(c), the sentencing judge sentenced Dove to 25 years' incarceration without the possibility of parole.

Dove filed a timely appeal to the Court of Special Appeals, arguing, *inter alia,* that the sentencing court erred, as a matter of law, in finding that the State's evidence met the requirements for enhanced sentencing under § 5–608(c). Dove argued that Md. Rule 4–342(d) required the disclosure of

the fingerprint card, which was intended to be admitted into evidence, prior to the sentencing hearing and the failure to disclose required a postponement of the sentencing hearing. The Court of Special Appeals, in an unreported opinion, held that the State's failure to disclose the fingerprint card violated Md. Rule 4–342(d), and that Dove's objection preserved the issue for appellate review, despite Dove's failure to cite the Rule upon objecting or specifically requesting a postponement of the sentencing hearing. The intermediate appellate court, however, held that the admission of the fingerprint card was harmless error because the fingerprint card was cumulative evidence, and thus the admission of the undisclosed evidence did not prejudice Dove. Accordingly, the Court of Special Appeals affirmed the judgment of the Circuit Court.

Dove filed a petition for a writ of certiorari in this Court, which we granted, *Dove v. State*, 411 Md. 355, 983 A.2d 431 (2009), to answer the following questions:

1. Did the Court of Special Appeals err in finding "harmless error" could be applied to substantive violations of Md. Rule 4–342(d)?

2. Did the Court of Special Appeals err in finding harmless the introduction of evidence in violation of Md. Rule 4–342(d), where that evidence was used by the sentencing court to establish identity and provided the basis for an expert witness' opinion and testimony?

We shall answer the first question in the negative, the second question in the affirmative, and reverse the judgment of the Court of Special Appeals.

## Standard of Review

 Where, as in the present case, the sentencing judge made no specific finding as to whether the State violated the Maryland Rules, we exercise our independent judgment and review, as a matter of law, whether a violation occurred. *Williams v. State*, 364 Md. 160, 169, 771 A.2d 1082, 1087 (2001).

738

## Discussion

Md. Rule 4–342 governs sentencing procedures in non-capital cases. The Rule enumerates the State's required pre-sentencing disclosures, and the remedy for failure to disclose:

(d) **Presentence disclosures by the State's Attorney.** Sufficiently in advance of sentencing to afford the defendant a reasonable opportunity *to investigate,* the State's Attorney shall disclose to the defendant or counsel *any information* that the State expects to present to the court for consideration in sentencing. If the court finds that the information was not timely provided, the court shall postpone sentencing.

Md. Rule 4–342(d).

■■■ To interpret the Maryland Rules, we use the same well-established canons of construction that we use when interpreting statutes. *Hartless v. State,* 327 Md. 558, 563, 611 A.2d 581, 583 (1992). "As we have so often stated, the chief objective of statutory construction is to discover and effectuate the actual intent of the legislature in enacting the statute." *Deville v. State,* 383 Md. 217, 223, 858 A.2d 484, 487 (2004). When interpreting legislative intent, "we look first to the plain language of the statute [or Rule], 'as the words of the statute, given their ordinary and popularly understood meaning, are the primary source of legislative intent.' " *Melgar v. State,* 355 Md. 339, 347, 734 A.2d 712, 716 (1999) (quoting *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994)).

■■■ As this Court and the intermediate appellate court have reiterated on numerous occasions, the word "shall" indicates the intent that a provision is mandatory. *E.g., State v. Green,* 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001) ("When the Legislature commands that something be done, using words such as 'shall' or 'must' rather than 'may' or 'should,' the obligation to comply with the statute or rule is mandatory."); *Green v. State,* 127 Md.App. 758, 773–74, 736 A.2d 450, 458 (1999) (interpreting the use of "shall" in Rule 4–342(d) as indicating disclosure is mandatory). In the case of Rule 4–342(d), our use of the word "shall" mandates the disclosure of

"any information the State expects to present to the Court for consideration in sentencing," including any witnesses and any documents or physical evidence on which it intends to rely. *Green*, 127 Md.App. at 773, 736 A.2d at 457. "The State's compliance with these rules is never discretionary, as the Maryland Rules of Procedure have the force of law; *see Dotson v. State*, 321 Md. 515, [523] 583 A.2d 710, 714 (1991); they are not mere guides but are 'precise rubrics' to be strictly followed." *Williams*, 364 Md. at 171, 771 A.2d at 1088.

 The purpose of Md. Rule 4–342(d) is to notify the defendant of the information the State will present against him or her at the sentencing hearing and afford the defendant a reasonable opportunity to investigate the State's information in order to prepare for sentencing. *See Hutchins v. State*, 339 Md. 466, 472–73, 663 A.2d 1281, 1285 (1995) (noting that the purpose of Rule 4–263(b), mandating the information that the State must disclose to a criminal defendant upon request before trial, is to "assist the defendant in preparing his defense, and to protect him from surprise") (quoting *Mayson v. State*, 238 Md. 283, 287, 208 A.2d 599, 602 (1965)); *Carter v. State*, 319 Md. 618, 621, 574 A.2d 305, 306 (1990) (noting that the purpose of notice provisions "is, and always has been, to inform a defendant fully of the nature of the State's case against him in order that he may intelligently conduct his defense") (quoting *King v. State*, 300 Md. 218, 231, 477 A.2d 768, 775 (1984)). The Rule requires that the information be provided in advance of the sentencing hearing so that the defendant has a reasonable opportunity to investigate the State's information. The plain language of the Rule is broad and encompasses any information on which the State plans to rely at sentencing. The Rule does not make an exception for substantial compliance or information the defendant could have requested or uncovered through investigation. *See Gorge v. State*, 386 Md. 600, 618–19, 873 A.2d 1171, 1182 (2005) ("[T]o fall back on the general purpose of the notice statute in the instant case and hold that actual notice will suffice, ignores the plain language of the statute we must construe.... Simply stated, we are not permitted to ignore the language of the

statute.") (Footnotes omitted.). As the Court of Special Appeals held in *Green,* 127 Md.App. at 774, 736 A.2d at 458, under the plain language of Rule 4–342(d), the defendant's awareness that certain types of evidence might be presented at the sentencing hearing is not sufficient to fulfill the Rule's notice requirement, and that the "rule's purpose could not be carried out absent the required notice to defense counsel."

The State presented the fingerprint card in question as substantive evidence of the defendant's identity in the prior conviction. The State conceded to the sentencing judge that it failed to disclose the fingerprint card to Dove in advance of sentencing. Because the fingerprint card contained "information that the State expect[ed] to present to the court for consideration in sentencing," and the State actually presented the fingerprint card to the sentencing judge, Md. Rule 4–342(d) required that the State disclose the fingerprint card to Dove in advance of sentencing.[4] Thus, in the present case, the State violated Md. Rule 4–342(d) when it presented the fingerprint card to the sentencing judge for consideration as evidence without first disclosing the card to Dove in advance of the sentencing hearing.

The defendant's remedy when the State fails to timely disclose evidence it intends to present at a sentencing hearing is clear and unambiguous. *See, e.g., Melgar,* 355 Md. at 347, 734 A.2d at 716 ("If the language of the statute is plain and clear, and expresses a meaning consistent with the statute's goals and apparent purpose, our inquiry is ordinarily at an end."). Md. Rule 4–342(d) states that, if the evidence is not timely disclosed, the sentencing judge "shall postpone sentencing." This remedy comports with the Rule's purpose, which is

---

4. The State could have satisfied this requirement by, at least, furnishing defense counsel, in advance of sentencing, with a copy of the fingerprint cards and/or a copy of the expert witness's written report, if any, or both. If no written report was made, the State could have disclosed to the defense the substance of the expert witness's testimony and provided the defense with a copy of any documents or reports the expert relied on and/or the State intended to offer into evidence. *See* Md. Rule 4–263(d)(8) and (9).

to allow the defendant a reasonable opportunity to investigate the State's information. As discussed *infra*, the use of the word "shall" indicates that the sentencing judge lacks the discretion to admit the evidence and proceed with the sentencing hearing; rather, the sentencing judge must postpone the hearing to allow the defendant the opportunity to investigate the evidence and prepare accordingly. *See Smith v. State*, 308 Md. 162, 170, 517 A.2d 1081, 1085 (1986) (noting that required disclosures pursuant to Md. Rule 4–342 limit the judge's discretion in sentencing). The mandatory postponement provided for under Md. Rule 4–342(d) distinguishes this Rule from the rules governing discovery at trial, where the discovery rules afford the judge broad discretion in determining an appropriate remedy for a discovery violation. *See* Md. Rule 4–263(n) (listing the sanctions the court may, but is not required to, impose if the parties fail to comply with rules governing discovery). In the present case, the sentencing judge erred in failing to postpone the sentencing hearing as mandated by Md. Rule 4–342(d).

In his petition for writ of certiorari, Dove first questions whether the harmless error analysis could be applied to substantive violations of Md. Rule 4–342(d) under any circumstances. Dove argues that the harmless error standard should not be applied to violations of Md. Rule 4–342(d) because a failure to provide proper notice always prejudices the defendant's ability to prepare. This is so, Dove contends, because there is no way of knowing what a defendant could have done if he or she had been provided notice and had the opportunity to review or investigate the State's evidence. In response, the State counters that violations of Md. Rule 4–342(d) are essentially discovery violations, and points out that this Court has generally applied the harmless error standard to discovery violations in criminal cases.

Generally, we have declined to apply a per se rule prohibiting a harmless error analysis, even in cases involving violations of the Maryland Rules. *See King v. State*, 300 Md. 218, 223, 477 A.2d 768, 771–72 (1984); *Noble v. State*, 293 Md. 549,

556–57, 446 A.2d 844, 847–49 (1982); *Wiener v. State,* 290 Md. 425, 450, 430 A.2d 588, 602 (1981); *see also Pantazes v. State,* 141 Md.App. 422, 445, 785 A.2d 865, 878 (2001). As we explained in *Noble,* 293 Md. at 557–58, 446 A.2d at 848:

> This Court has firmly adhered to the principle that the rules of procedure are precise rubrics to be strictly followed, and we shall continue to do so. A violation of one of these rules constitutes an error, normally, requiring such curative action or sanction as may be appropriate.
>
> * * *
>
> It does not follow, however, that the harmless error doctrine has no application to the Maryland Rules and that a violation of a procedural rule can never be harmless. There is no basis in authority or logic for such a holding. It is true that the violations of certain rules, because of the nature and purpose of those particular rules, can rarely be deemed harmless error.... Nevertheless, this Court has not held that the harmless error principle can never be applicable to a violation of the criminal rules.

It may be true that violations of Md. Rule 4–342(d) are rarely harmless, because the Rule entitles the defendant to notice and allows him or her time to prepare a defense at sentencing, *see Green,* 127 Md.App. at 773, 736 A.2d at 458, but we cannot say that violations of Md. Rule 4–342(d) can never be harmless. *See Wiener,* 290 Md. at 449–51, 430 A.2d at 601–02 (holding that a violation of an earlier version of Md. Rule 4–342(d) was a harmless error when the only choices at the sentencing hearing were for the court to impose the death penalty or a life sentence, and the court imposed the lesser sentence); *Outmezguine v. State,* 97 Md.App. 151, 169–170, 627 A.2d 541, 550 (1993), *aff'd by* 335 Md. 20, 641 A.2d 870 (1994) (holding that, where the State provided a victim impact statement only minutes before a sentencing hearing, the error was not prejudicial when defense counsel stated he was able to continue and the sentencing judge did not mention the victim impact statement in the decision). Thus, we shall answer Dove's first question in the negative and hold that the Court of

Special Appeals did not err in applying a harmless error analysis to the State's violation of Md. Rule 4-342(d).

▬▬▬▬ To answer Dove's second question raised in the petition for writ of certiorari, we shall apply the harmless error analysis to the facts of the present case. This Court announced the standard for evaluating harmless error in *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976):

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed 'harmless' and a reversal is mandated. Such reviewing court must thus be satisfied that there is no reasonable possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

Maryland appellate courts continue to follow the standard established in *Dorsey. See, e.g., Boulden v. State*, 414 Md. 284, 307, 995 A.2d 268, 281-82 (2010); *Hutchinson v. State*, 406 Md. 219, 227, 958 A.2d 284, 288 (2008); *Lee v. State*, 405 Md. 148, 174, 950 A.2d 125, 140 (2008); *State v. Baby*, 404 Md. 220, 265, 946 A.2d 463, 489 (2008); *Bellamy v. State*, 403 Md. 308, 332, 941 A.2d 1107, 1121 (2008); *State v. Logan*, 394 Md. 378, 387-91, 906 A.2d 374, 380-82 (2006); *Clemons v. State*, 392 Md. 339, 372, 896 A.2d 1059, 1078-79 (2006); *see also Canela v. State*, 193 Md.App. 259, 997 A.2d 793 (2010). The harmless error standard is highly favorable to the defendant, *Bellamy*, 403 Md. at 332, 941 A.2d at 1121, and "the burden is on the State to show that [the error] was harmless beyond a reasonable doubt" and did not influence the outcome of the case. *Denicolis v. State*, 378 Md. 646, 658-59, 837 A.2d 944, 952 (2003).

▬▬▬▬ In considering whether an error was harmless, we also consider whether the evidence presented in error was cumulative evidence. Evidence is cumulative when, beyond a reasonable doubt, we are convinced that "there was sufficient evidence, independent of the [evidence] complained of, to

support the appellant['s] conviction[ ]." *Richardson v. State,* 7 Md.App. 334, 343, 255 A.2d 463, 468 (1969). In other words, cumulative evidence tends to prove the same point as other evidence presented during the trial or sentencing hearing. For example, witness testimony is cumulative when it repeats the testimony of other witnesses introduced during the State's case-in-chief. *See Hutchinson,* 406 Md. at 227–28, 958 A.2d at 288–89 (holding that improperly admitted expert testimony was not cumulative when the testimony "did not repeat the testimony of any of the prior witnesses introduced during the State's case-in-chief" and the testimony asserted that the victim's injuries were consistent with her description of the incident). "The essence of this test is the determination whether the cumulative effect of the properly admitted evidence so outweighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded." *Ross v. State,* 276 Md. 664, 674, 350 A.2d 680, 687 (1976).

Dove argues that the sentencing judge clearly relied upon the fingerprint cards in evaluating the expert's testimony and in determining whether the State successfully established Dove's identity in the prior convictions. Dove points out that the State must prove all elements of the enhanced penalty statute beyond a reasonable doubt. In this case, the sentencing judge used the evidence, which should have been excluded, to determine that one of the elements, identification, had been met. Without the fingerprint card, in Dove's view, the State could not have established Dove's identity or linked him to the previous qualifying conviction. Dove further contends that the fingerprint card was not cumulative, as the State asserts, because the card formed the underlying factual basis supporting the expert's opinion.

The State responds to Dove's argument by pointing out that it was the expert's testimony, not the fingerprint card, that established Dove's identity in the previous qualifying conviction. In the State's view, the fingerprint card itself has no probative value independent of the expert's opinion testimony.

As the State maintains, Dove received proper notice that the expert would testify and had the opportunity to prepare and cross-examine the expert. According to the State, disclosure of the expert's identity prior to the hearing was sufficient to permit Dove time to adequately prepare.

In the present case, the State sought to prove that Dove was a repeat offender, subject to an enhanced penalty, pursuant to § 5–608(c). In analyzing whether the State's violation of Md. Rule 4–342(d) was harmless, we must evaluate what the State was required to prove pursuant to § 5–608(c), and whether the fingerprint card was cumulative evidence of what the State sought to prove. Section 5–608, in the relevant part, states:

(a) *In general.*—Except as otherwise provided in this section, a person who violates a provision of § § 5–602 through 5–606 of this subtitle with respect to a Schedule I or Schedule II narcotic drug is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years or a fine not exceeding $25,000 or both.

\* \* \*

(c) *Third time offender.*—(1) A person who is convicted under subsection (a) of this section or of conspiracy to commit a crime included in subsection (a) of this section shall be sentenced to imprisonment for not less than 25 years and is subject to a fine not exceeding $100,000 if the person previously:

(i) has served at least one term of confinement of at least 180 days in a correctional institution as a result of a conviction under subsection (a) of this section or § 5–614 of this subtitle; and

(ii) has been convicted twice, if the convictions arise from separate occasions:

1. under subsection (a) of this section;

2. of conspiracy to commit a crime included in subsection (a) of this section;

3. of a crime under the laws of another state or the United States that would be a crime included in subsection (a) of this section if committed in this State; or

4. of any combination of these crimes.

(2) The court may not suspend any part of the mandatory minimum sentence of 25 years.

(3) Except as provided in § 4–305 of the Correctional Services Article, the person is not eligible for parole during the mandatory minimum sentence.

(4) A separate occasion is one in which the second or succeeding crime is committed after there has been a charging document filed for the preceding crime.

When the State seeks an enhanced penalty, the State must prove each element of the enhanced penalty statute beyond a reasonable doubt, including the defendant's identity in the previous qualifying convictions. *E.g., Melgar,* 355 Md. at 348, 734 A.2d at 717 (citing *Jones v. State,* 324 Md. 32, 37, 595 A.2d 463, 465 (1991)); *Lee v. State,* 332 Md. 654, 660, 632 A.2d 1183, 1186 (1993) (noting that the burden of establishing the prior offense(s) rests with the State and requires the State to prove "that the same person committed both the prior and current offenses."). In the present case, the State relied on the fingerprint card in question and the expert's testimony about the fingerprints to prove that the defendant was the individual convicted of the prior offense.

Although the fingerprint card itself was admitted into evidence in violation of Md. Rule 4–342(d), the State provided Dove with proper notice of Detective Valentine's expert testimony. Md. Rule 5–703(a) establishes the permissible bases of opinion testimony by experts:

**Rule 5–703. Bases of opinion testimony by experts.**

(a) **In general.** The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon

the subject, the facts or data need not be admissible in evidence.

As an expert in the identification of known inked fingerprints, Detective Valentine would routinely rely upon fingerprint cards in formulating opinions about fingerprint comparisons. Thus, Detective Valentine could properly testify about the comparison of the fingerprints on the fingerprint card to inked impressions taken from Dove. Even if the State had not sought to admit the fingerprint card into evidence, Detective Valentine could have relied on the fingerprint card in making a comparison. The relevant question, therefore, is whether the admission of the fingerprint card itself into evidence is cumulative evidence in light of Detective Valentine's testimony, and thus harmless error.

Detective Valentine testified about his comparison of the fingerprint card in question to Dove's fingerprints as follows:

[State's Attorney]: Now, Detective Valentine, in reference to the fingerprint card for the conviction for the June 7th arrest, what actions did you take to compare those known inked fingerprints.

[Defense Counsel]: Objection, Your Honor. I don't believe that card purports to have a a date on it to show what case or what date it is from, much less a prior conviction. It only shows that it is according to that certification a prior print from their repository.

The Court: Sustained.

[State's Attorney]: Your Honor, Detective Valentine has testified that he retrieved those fingerprints from the June 7th arrest of the Defendant.

The Court: He did. I agree. So I have now in front of me which I have not yet admitted as State's 2 which are fingerprints of the Defendant's arrest. You asked him a question of conviction. Sustained. Next question.

[State's Attorney]: Detective Valentine, did you have occasion to compare fingerprints taken from the June 7th, 2000 arrest to fingerprints of the defendant in this case, Sean Dove?

Detective Valentine: Yes, I have.

[State's Attorney]: And can you tell us the process that you went through to make the comparison?

Detective Valentine: ... I went back to the lock-up a short time ago and took inked impressions of the Defendant's left thumb and left index finger and compared those to the fingerprint card marked as State's Exhibit Number 2 to determine if in fact they were made by the same person.

[State's Attorney]: Okay. And how many points of comparison did you make this case?

Detective Valentine: I made twelve in that case and, in that examination.

[State's Attorney]: And could you have made more?

Detective Valentine: I have made many more, yes.

[State's Attorney]: So based on what you found, do you have an opinion as to whether the fingerprints on that card, State's Exhibit Number 2, match the Defendant in this case, Sean Dove?

Detective Valentine: They are made by one in the same person.

Detective Valentine's testimony established that the fingerprints on the fingerprint card in question belonged to Dove. The State correctly points out that the fingerprints themselves would be of little probative value in establishing Dove's identity without the expert's testimony. The fingerprints themselves, however, are not the only information contained on the fingerprint card. The sentencing judge stated that he referred not only to the expert's testimony, but also to the information contained "on the document[ ] [itself]." In our review of the fingerprint card, we note that the card contains not only inked impressions, but also the name, height, weight, race, date of birth, and address of the person who was allegedly fingerprinted. In addressing Dove's objection to the admission of the fingerprint card, the sentencing judge indicated that he considered the identifying information on the card in considering the card's probative value:

The Court: Any additional on State's Exhibit numbers 2 or 4?

[Defense Counsel]: Only that those cards could be from any other prior arrest. There is nothing to identify them. The fact that he requested them from a certain file doesn't mean that is where they came from. There is nothing on the certification, nothing on the fingerprint cards referencing a date, a case, nothing other than it has a name and date of birth. But not when they were taken and what case they relate to. They are fundamentally unreliable. I would object to their introduction.

The Court: Well, in both of them they have the defendant's—both of them meaning State's Exhibits numbers 2 and 4, they have the Defendant's name as Sean Anthony Dove. In both of them they have height of 5–11, weight is two ten; State's two is two ten, State's 4 is two-o-five. Both of them have him listed as black male. Both of them have him listed of a date of birth of 12–26–1972. Each of the victim informations [sic] that have been filed they list the Defendant's name as Sean Dove with a date of birth of 12–26–1972. So I'm going to admit State's 2 and 4.

The sentencing judge's reference to the substantive information contained on the fingerprint card in relation to its reliability undercuts the State's position that the fingerprint card has no probative value independent of the expert testimony. By contrast, the fingerprint card contains other information about the identity of the person fingerprinted. Based on the findings of the sentencing judge, he relied on the information on the card itself, as well as the expert's testimony about the card.

Most importantly, the fingerprint card contains information that links the card to the certified copy of the prior conviction. To establish Dove's identity in the prior conviction, the State needed to establish a nexus between Dove and the certified record of the prior conviction. In the present case, Detective Valentine's testimony connected Dove to the inked impression on the fingerprint card, but not to the certified record of the

conviction Thus, to establish a nexus between Dove and the certified record of the conviction via the inked impression on the fingerprint card, the State had to connect the fingerprint card to the certified record of the prior conviction. Accordingly, we are unable to say, beyond a reasonable doubt, that the information contained on the fingerprint card itself did not influence the sentencing judge's decision to connect Dove to the prior convictions and thereby impose an enhanced sentence. As the Court pointed out to the State's Attorney in response to Dove's objection, Detective Valentine's testimony connected Dove to the fingerprints taken from an arrest, but not to the conviction.

Generally, reviewing a sentencing judge's decision to determine whether an error was harmless presents a clear advantage over reviewing a jury's decision. Unlike a jury verdict, the sentencing judge may explicitly state what evidence he or she relied upon in reaching a decision. In the present case, the sentencing judge affirmatively stated that he relied upon the fingerprint cards. The sentencing judge stated when making his ruling: "Now, in looking at State's Exhibits 2 [the fingerprint card in question] and 4 as I have already mentioned, I think that there is sufficient identification information *both on the documents themselves* and what the detective testified to when he requested specific documents related to specific arrests." (Emphasis added.) Accordingly, it is impossible for this Court to declare, beyond a reasonable doubt, that the fingerprint card in question had no impact on the sentencing judge's determination that the State satisfied its burden in establishing Dove's identity in the previous qualifying conviction, because the sentencing judge affirmatively stated that he relied on the improper evidence.

We are also unable to say, beyond a reasonable doubt, that the information contained on the certified record of the conviction, on its own, was evidence or the only evidence that connected the prior conviction to Dove. While the certified record of the conviction, which was properly admitted into evidence, contains some information that is probative of identity, the fingerprint card contains more detailed identifying

information that is not contained in the certified record of the conviction. For example, the fingerprint card contains information about height, weight, and race, which is not contained in the certified record of the conviction. The certified record of the conviction for case number 200202007, which corresponds to the fingerprint card in question, contains several identification numbers,[5] two different dates of birth and two different addresses. Thus, the probative evidence of identity on the conviction record could be viewed as conflicting, and contains less information than the fingerprint card. Conversely, the substantive information on the fingerprint card, which was improperly admitted into evidence, likely influenced the sentencing judge's determination that the State had sufficiently connected the fingerprints on the card to the certified record of the prior conviction. Thus, we cannot say, beyond a reasonable doubt, that the identifying information on the certified record of the conviction alone would have been sufficient to connect Dove to the prior conviction.

In fact, the record shows that the sentencing judge relied on the information on the fingerprint card in reaching a decision. The sentencing judge stated that "although the documents seem somewhat confusing, that upon closer inspection you can understand what circumstances were and especially, and this is important, the Defendant pled guilty to possession with intent to distribute each one of these offenses...." The sentencing judge's statement suggests that he relied on the documents read together as a whole, including the fingerprint

---

5. In addition to the case number, the record of the certified conviction contains a SID number. According to Detective Valentine's testimony on redirect examination, "[a] SID number is a state identification number ... that the State assigned to a set of fingerprints cards when they receive[d] it." Once an individual is in the state system, "[a]ny other fingerprints that come in from any other arrest anywhere in the State, when they are compared to that base file set of fingerprints, if they are in fact the same defendant, they will receive the same SID number." We note that the sentencing judge did not state in his decision that he relied on the State's Exhibit 5, which is a record of an SID number for Sean Anthony Dove, but that the sentencing judge did state that he relied on State's Exhibit 2, the fingerprint card, which we have determined was admitted into evidence erroneously.

card, in reaching a decision. Thus, as the fingerprint card was an integral part of the finding that the State met its burden of proof, the fingerprint card was not merely cumulative evidence.

Because the sentencing judge affirmatively stated that he relied on the fingerprint card in determining that the State met its burden of proving identity, and because the fingerprint card was not cumulative evidence, we hold that the admission of the fingerprint card in violation of Rule 4–342(d) was not harmless error. The remedy for a violation of Rule 4–342(d) is to vacate the defendant's sentence and remand the case for a new sentencing hearing.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF CONVICTION, VACATE THE SENTENCE IMPOSED, AND REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE COUNTY. BALTIMORE COUNTY TO PAY THE COSTS.**