995 A.2d 975

**David GRANT**

v.

**STATE of Maryland.**

**No. 88 Sept.Term, 2009.**

Court of Appeals of Maryland.

June 7, 2010.

George E. Burns, Jr., Asst. Public Defender (Elizabeth L. Julian, Acting Public Defender, Baltimore, MD), on brief for Petitioner.

Daniel J. Jawor, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, Judge.

The absence of a sufficient record of the evidentiary basis for a circuit court's exercise of its discretion under Rule 4–215(d) will control our decision in this waiver of counsel case. Petitioner David Grant was arrested and charged with possession of counterfeit goods with intent to sell, in connection with his possession of allegedly counterfeit compact discs and digital video discs. Grant appeared without counsel at trial in the Circuit Court for Baltimore City, and requested a postponement to enable him to seek representation from the Office of the Public Defender ("OPD"). The trial court initially granted the postponement, but reversed itself shortly thereafter, after receiving information that Grant had allegedly previously rejected the OPD's services. The information, in the form of a statement from an unidentified public defender in the audience, was allegedly corroborated by the trial court's later investigation into Grant's OPD file. Neither the name of the public defender nor the file consulted by the trial court appear in the record.

Grant denied that he wished to waive his right to counsel, but the trial court refused to allow a postponement. Grant proceeded to trial without counsel, representing himself, and was convicted on all counts. The convictions were affirmed by the Court of Special Appeals. We granted certiorari to consider the following question:

> Did the trial court err in denying Petitioner a postponement [under Rule 4–215(d)] on the basis of an unreviewable and contested belief that Petitioner had refused public defender representation?

We will hold that the trial court abused its discretion in basing its decision to deny Grant's request for a postponement

on information that was wholly outside of the record, because that act prevented meaningful appellate review of the trial court's exercise of its discretion.

## FACTS AND LEGAL PROCEEDINGS

Petitioner David Grant was arrested on May 27, 2008, while in possession of allegedly counterfeit compact discs and digital video discs. He was charged with two counts of possession with intent to sell counterfeit goods. *See* Md.Code (2002), § 8–611(b) of the Criminal Law Article ("C.L."). Grant was brought to trial on July 2, 2008, in the Circuit Court for Baltimore City.

On the day of trial, Grant appeared before the trial court and requested a postponement of proceedings in order to obtain counsel. According to Grant, he had applied to the OPD for representation, and was informed that there was not enough time between his application and the start of trial to assign counsel to him. Following this statement, the court granted a postponement until August 4, 2008, to enable Grant to find counsel. The court informed Grant that he would not be entitled to any additional postponements, and that if Grant were not eligible for OPD representation, then he would have to hire private counsel if he wished to be represented at trial. Grant indicated that he understood the arrangement.

Immediately following this exchange, an unusual series of events transpired. The State's Attorney in charge of the prosecution, Brendan Inscho, informed the court that Grant had in fact previously rejected OPD representation. This information appears to have been relayed to Inscho by one of five public defenders present in the courtroom at the time. There is no indication in the record that the presence of these public defenders was related to Grant's case. In response to this information, the court announced that the case would be tried that day. Grant immediately denied that he had rejected OPD representation, reiterating his understanding that the OPD had rejected his application. The trial court announced

that it would "make an inquiry on [Grant's] behalf[,]" and instructed Grant to return to the courtroom that afternoon.

Grant returned to the courtroom as scheduled. At this time, the court informed Grant that "[i]n your case [the OPD has] a file, arrested on May 28, with your ID number and your interview. You were interviewed on the twenty ninth. And you rejected the services of the public defender and you signed your name David Grant on the file." Grant informed the court that he "just spoke to the Public Defender's Office" and had received a letter from the OPD. The letter was apparently passed from Grant to Inscho, who informed the court that it was an application form stating that Grant did not timely apply for representation. Grant explained that "I'm not trying to waive my right to counsel." The trial court declined to delay trial further, because it was "apparent that [Grant] had said to the Public Defender's Office that you don't want their services[,]" and told Grant that he could represent himself in court.

After a brief recess, the case was recalled once more. Grant rejected a plea offer of time served, which would have violated a probation agreement in an unrelated case, and requested a jury trial instead. A jury was selected and sworn, and the case was postponed until the next day to allow the State to bring its physical evidence to the courtroom. At trial the next day, Grant proceeded pro se, and was convicted on both counts. The court sentenced Grant to two concurrent sentences of eighteen months imprisonment with all but four months suspended, less time served, in addition to three years probation.

Grant appealed his conviction to the Court of Special Appeals ("CSA"), arguing that he was erroneously denied a trial postponement so that he could be represented by the OPD. In an unreported opinion, the CSA affirmed the judgment of the Circuit Court for Baltimore City. The intermediate appellate court held that Grant had not contested the accuracy of his OPD file in his appeal, or the trial court's reliance on the file. The CSA further held that the trial court did not abuse its

discretion in rejecting Grant's postponement request. We granted Grant's petition for a writ of certiorari.[1]

## DISCUSSION

■ Grant asks this Court to reverse the decision of the CSA, and hold that the trial court abused its discretion in refusing to postpone proceedings to allow Grant to obtain counsel. He argues that the appropriate remedy is a new trial on the merits of his case. The State argues that we should affirm the holding of the CSA, but that if we do agree with Grant, the appropriate remedy is a limited remand to the trial court for review of the existing evidence rather than the granting of a new trial. We shall first address the merits of Grant's claim, and then the proper remedy in his case.[2]

*The Circuit Court's Exercise of Discretion*

■ The right to counsel is "basic to our adversary system of criminal justice, and . . . is guaranteed by the federal and Maryland constitutions to every defendant in all criminal prosecutions." *Parren v. State*, 309 Md. 260, 281–82, 523 A.2d 597, 608 (1987). Maryland Rule 4–215, which defines the mechanisms by which a defendant can waive her right to counsel, establishes fixed and stringent procedures governing waiver in order to ensure that this right is protected. *See State v. Brown*, 342 Md. 404, 412, 676 A.2d 513, 517 (1996). Because of the fundamental nature of the right to counsel, any waiver of the right must comply absolutely with the requirements of Rule 4–215. *See Parren*, 309 Md. at 280, 523 A.2d at 607 (holding that courts must strictly comply with the provi-

---

1. *Grant v. State*, 410 Md. 559, 979 A.2d 707 (2009) (granting certiorari).

2. The State argues that "the only question posed by this appeal is whether this Court can undertake meaningful appellate review." The State further argues that Grant did not preserve this issue for review, as he did not argue it before the CSA, and that this Court should decline to consider Grant's complaint for that reason. We have reviewed the briefs in the CSA, and we disagree. This issue is implicit in the arguments set forth by Grant in his briefs in the intermediate appellate court.

sions of the Rule). A trial court that fails to comply with the requirements of the Rule has committed reversible error. *See Thompson v. State*, 284 Md. 113, 130–31, 394 A.2d 1190, 1199 (1978).

Not all waivers of the right to counsel require affirmative acts on the part of a defendant. A defendant may waive her right to counsel through inaction. Section (d) of Rule 4–215 governs waiver by inaction in a circuit court proceeding, and it reads in part as follows:

> **Waiver by inaction—Circuit Court.** If a defendant appears in circuit court without counsel on the date set for hearing or trial, [and] indicates a desire to have counsel . . . the court shall permit the defendant to explain the appearance without counsel. **If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time** and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

Md. Rule 4–215(d) (some emphasis added). The use of the word "shall" in this provision commands mandatory action by a circuit court, i.e., proceedings against a defendant who appears in court without counsel must be continued to a later time if the court finds that the defendant has a meritorious reason for appearing without counsel. *See Johnson v. State*, 355 Md. 420, 452, 735 A.2d 1003, 1020 (1999) ("[T]he rule's provisions are mandatory, as indicated by the use of the word 'shall.' ").

As the State indicates in its brief, "[t]here is no prescribed or set form of inquiry that must precede a trial judge's finding of waiver" under Rule 4–215(d). *Broadwater*

*v. State,* 401 Md. 175, 203, 931 A.2d 1098, 1114 (2007). As we have said,

> [i]n determining whether the defendant's reason is meritorious, the court's inquiry (1) must be sufficient to permit it to exercise its discretion ... (2) must not ignore information relevant to whether the defendant's inaction constitutes waiver ... and (3) must reflect that the court actually considered the defendant's reasons for appearing without counsel before making a decision.

*Broadwater,* 401 Md. at 204, 931 A.2d at 1114 (*quoting McCracken v. State,* 150 Md.App. 330, 356–57, 820 A.2d 593, 609 (2003)). We review a trial court's finding of waiver under Rule 4–215(d) only for an abuse of discretion. *See, e.g., Broadwater,* 401 Md. at 206, 931 A.2d at 1116. A trial court abuses its discretion when a discretionary decision "either does not logically follow from the findings upon which it supposedly rests or has no reasonable relationship to its announced objective." *Dehn v. Edgecombe,* 384 Md. 606, 628, 865 A.2d 603, 616 (2005) (*quoting North v. North,* 102 Md.App. 1, 14, 648 A.2d 1025, 1032 (1994)).

In order to assess whether the trial court abused its discretion, we must carefully examine the sequence of events that ultimately led to Grant's trial without counsel. The following exchange occurred between Grant, the State, and the trial court, after the case had initially been called:

> [GRANT:] I was wondering, if it's okay with you, can I get this thing postponed so I can get me a lawyer?

> [THE COURT:] You can't get it postponed, but you can try the State—we will start it this afternoon. I can offer you time served.

> [GRANT:] I understand that. But you see, when I went to the Public Defender's Office yesterday they said they didn't have enough time for me to get represented. Because I went to the Public Defender on Monday. And they said they didn't have enough time, and I couldn't get private counsel, but that's what I imagine is—

[THE COURT:] Alright, but you can only get back to me on the twenty seventh. I'm gonna give you a postponement. Because somebody is gonna be looking for some time, okay.

[INSCHO:] Each count does carry five years Your Honor.

[THE COURT:] What?

[INSCHO:] Each count does carry five years.

[THE COURT:] I'm gonna postpone it until when? Thirty days. Give him thirty days.

[INSCHO:] I have already postponed one day until Monday, August 4, or that first Monday.

[THE COURT:] Alright. We are postponing Mr. David Grant's case for approximately a month to April—to August 4 in this Court. And we are giving Mr. Grant a notice to get an attorney. No postponements. No more postponements. And apparently he did try to get a public defender. The Court takes your word for that. But you need a lawyer, whether you're eligible for a public defender or not, okay. That's not up to me that's up to the Public Defendant's [sic] Office. But if your [sic] not eligible for a Public Defender you have to hire your own lawyer. Case goes forward on August 4, 2008.

From this interchange, it is clear that the trial court was willing to postpone—indeed, *did postpone*—the proceedings against Grant to allow him to seek representation. By definition, this means that the trial court must have either found Grant's explanation of his circumstances to be a "meritorious reason" for his appearance without counsel under Rule 4–215(d), or found that Grant lacked a meritorious reason but that he nonetheless had not waived his right to counsel.

The trial court reversed itself shortly thereafter. The colloquy appears below:

[INSCHO:] Your Honor I've been told that Mr. Grant did in fact reject the Public Defender's Office.

[THE COURT:] Mr. Brendan [Inscho] what's his last name?

[INSCHO:] Grant Your Honor. The gentleman whose case was just postponement [sic].

[THE COURT:] He reject [sic] the Public Defender?

[GRANT:] Yes I did.

[THE COURT:] Alright, we're trying the case. Who says that?

[GRANT:] Hold up I never said that, hold up. When was this?

[THE COURT:] The Public Defender's Office has said that you rejected his [sic] service.

[GRANT:] Whose [sic] this?

[THE COURT:] I don't know we're here and we have five public defenders here. They just told the State's Attorney that you turned down—

[GRANT:] They turned down me.

[THE COURT:] Come back at 2 o'clock. Give him a summons for 2 o'clock.

[GRANT:] I told you—

[THE COURT:] 2 p.m. today. A summons.

[GRANT:] How is it that when I just got out of jail at—

[THE COURT:] I don't—

[GRANT:] Come on Your Honor.

[THE COURT:] I am told that you turned—by a public defender that you turned down the public defender[']s services.

[GRANT:] When was this?

[THE COURT:] I don't know.

After Grant's case was recalled that afternoon, he specifically said that "I'm not trying to waive my right to counsel."

It is clear from the record that Grant would have received a postponement but for the intervention of one or more of the "five public defenders" to whom the trial court alludes. The two passages quoted above are not separated by any intervening event that could have altered the trial judge's decision.[3]

---

**3.** In the brief period between the two excerpts quoted above, Inscho informed the trial court that Grant had previously requested a post-

The lone factor, discernable from the record, which caused the trial court to reverse its previous decision to postpone trial is the newly revealed information alleging that Grant had rejected OPD representation prior to the proceedings at issue. This information was apparently relayed to the trial court, through Inscho, from one or more unidentified public defenders in the audience. It was this information, and only this information, that spurred the trial court to "make an inquiry on [Grant's] behalf" with the OPD.

We have never held that a defendant's prior rejection of OPD representation, followed by a request to retain the services of the OPD, will necessarily preclude a defendant from having a "meritorious reason" to appear without counsel. We need not decide that question here. Instead we focus on the absence of a reviewable record. A record showing only that, according to the prosecutor, one or more unidentified public defenders in the audience with no apparent interest in Grant's case stated that Grant had previously rejected OPD representation, is not sufficiently reliable as a basis for the Circuit Court's self-reversal.

There are any number of ways in which this information could have been inadvertently adulterated. For example, the public defender may have mistaken Grant for another defendant, or just incorrectly recalled that Grant refused representation. Possibly the public defender may have recalled a written notation that Grant refused representation, but the notation may have been the result of a clerical error, or with respect to an unrelated trial. Given the uncertainty inherent in the transmittal of this information from the unidentified public defender(s), it cannot form the basis for an affirmance of the trial court's decision.

Similar difficulties present themselves with respect to Grant's OPD file, which was discussed by the trial court once it recalled Grant's trial on the afternoon of July 2, 2008. This

ponement in the District Court for Baltimore City, which had been denied. This did not dissuade the trial judge from reaffirming the postponement to August 4, 2009, at that time.

file allegedly contained information verifying the unnamed public defender's claim that Grant had rejected OPD representation prior to trial. As a threshold problem, without a record of the file's contents, we cannot be certain that the trial judge was in possession of the correct file. At oral argument, the State claimed that we need have no concern about whether the file consulted by the trial judge was in fact Grant's OPD file, because the file date read aloud by the judge corresponds with Grant's arrest date. The State, however, is in error about the accord between the two dates.

The trial judge stated that the OPD "ha[s] a file, arrested on May 28, with your ID number and your interview." In reality, Grant was arrested on May 27, 2008. The State, in its brief, parenthetically acknowledges the discrepancy between these two dates but nonetheless says that the file "indicate[s] with reasonable accuracy the date of Grant's arrest in this very case." [4] In this instance, with nothing in the record to review, "close enough" does not suffice.

The State, in an apparent effort to address these concerns, argues in its brief that the file must have been trustworthy because it "originated with the [OPD] and was created in the ordinary course of business." The State's reasoning is again unsound: we can only know that the file was "created in the ordinary course of business" by reviewing the file itself. Without this review, we have no way of ascertaining the file's trustworthiness. Moreover, the discrepancy between Grant's arrest date and the date read off of the file by the trial court cuts against the reliability of the file.

But more important than whether the trial judge was consulting Grant's actual file is whether the judge's interpretation of the contents of that file was correct and whether the trial judge acted within the bounds of his discretion. The only way for an appellate court to assess whether a discretionary

---

**4.** It is, of course, completely possible that the trial court merely misread the date in the file. Were the file present in the record, it would be a simple matter to verify. Without the presence of the file, we are left to speculate.

ruling logically flows from its factual underpinnings is to engage in an analysis of the underlying facts. Here, those facts are obscured from our view—we have no way of knowing if the trial court "ignored information relevant to whether [Grant's] inaction constituted waiver[,]" and thus abused its discretion. *Broadwater,* 401 Md. at 203, 931 A.2d at 1114.

This situation leads us to an unusual question: is it an abuse of discretion to obscure an exercise of discretion? This Court has not precisely addressed this question but on these facts, the answer is yes. We have previously held, with respect to waiver of counsel under Rule 4–215(d), that "it is not enough that a defendant is allowed to make an explanation sufficient to allow the court to determine whether the reason is meritorious; rather, the record must also be sufficient to reflect that the court actually considered those reasons." *Gray v. State,* 338 Md. 106, 112, 656 A.2d 766, 769 (1995) (quotation marks and citation omitted). A similar rationale applies here: it is impossible for this Court to tell if the trial judge actually considered Grant's reasons for appearing without counsel, because the posture of the record below prevents us from "actually considering" the factual foundation underlying the trial judge's decision. It would be a fundamental failure of the appellate review process if we were to affirm a conviction without actually reviewing the relevant record.

Few of our sister states have explicitly considered whether a trial court has engaged in an abuse of discretion when it exercises that discretion without preserving the evidentiary basis for its decision. Those who have considered the issue, however, agree that it is an abuse of discretion for a trial court to so act. The most relevant analogue to this case is *Watson v. State,* 196 So.2d 893 (Miss.1967). In *Watson,* the Supreme Court of Mississippi considered the appeal of a convicted defendant who had been denied a postponement to seek counsel to represent him during a retrial following a previously vacated conviction. The trial judge did not question Watson, on the record, as to his reasons for appearing without counsel. The appellate court held:

When constitutional rights are involved it is incumbent upon the trial court to have a full-blown hearing and a record reflecting the same. . . . In the case before us it is impossible for us to determine whether or not the court abused its discretion in refusing to grant the defendant additional time within which to secure counsel.

\* \* \*

It may well be that the trial judge was justified in refusing to give appellant additional time within which to secure counsel, but the record wholly fails to reveal this fact. We think that since a constitutional right was involved, the record should fully reflect the facts upon which the court's opinion was based.

*Id.* at 896. The court in *Watson* went on to reverse the defendant's conviction, and remand for a new trial, "with the accused being represented by counsel if he so desires." *Id.* at 896. The reasoning underlying this decision was sound—the court recognized that "[i]t may well be that the trial judge was justified" in denying the defendant further time to seek counsel, but that it was untenable to approve a discretionary decision where the trial judge's exercise of discretion was insulated from appellate review.[5]

---

5. Other courts have considered comparable issues, with similar results. The Supreme Court of New Mexico, for example, addressed a prosecutor's use of a blackboard to illustrate a homicide scene, where the blackboard itself was not (and perhaps could not have been) included in the court record. *See State v. Jones*, 51 N.M. 141, 179 P.2d 1001 (1947). While that court held that the use of a blackboard was permissible because the prosecutor included a paper replica of his illustration in the official record, the court also stated that it would have been an abuse of discretion for the trial court to have allowed the illustration if it had not somehow been preserved for appellate review. *See id.* at 1002 ("If the action of the trial court prevented the making of a complete record for review so that the defendant was injured thereby, it was an abuse of discretion."); *see also McCoyie v. Hammond*, 305 A.2d 263, 266 (D.C.1973) (relying on *Jones*); *Bradley v. City of Niagara Falls*, 6 A.D.2d 769, 174 N.Y.S.2d 145, 146 (1958) (holding that "[t]rial courts should cautiously guard against" allowing witnesses to testify about diagrams without identifying for the record the specific segments under discussion because "[c]larity of a record is necessary to an intelligent review by an appellate court.").

Precisely the same analysis applies here. We need not decide whether the trial court was justified in denying Grant a postponement to seek counsel. The fact that the trial court's bases for its decision (the statement allegedly given by the unnamed public defender and the file consulted by the judge) are beyond our reach makes it untenable to sustain the trial court's ruling as a permissible exercise of discretion. We hold that the trial court abused its discretion by relying exclusively on information outside of the record in denying Grant a postponement to seek counsel.

### The Appropriate Remedy

 We must now address the appropriate remedy. The State argues that if the trial court abused its discretion, this Court should grant a limited remand for the trial court "to receive into evidence the Public Defender's file upon which the trial court has already relied." Under Maryland Rule 8–604(d), a limited remand would be appropriate if we conclude that the substantial merits of Grant's case would not be determined by "affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings...." Md. Rule 8–604(d). Upon a limited remand, "the responsibility of the lower court is to review the evidence and make necessary findings and conclusions, rather than to receive more evidence." *Southern v. State,* 371 Md. 93, 111, 807 A.2d 13, 24 (2002).

*Mitchell v. State,* 337 Md. 509, 654 A.2d 1309 (1995), instructs us that a limited remand in this case would be improper. There we held that requiring a defendant to reconstruct the events that led to his appearance without counsel had a substantial potential to prejudice the defendant. *See id.* at 517, 654 A.2d at 1313 (holding that a new trial was the appropriate remedy where the trial court failed to conduct a proper Rule 4–215(d) inquiry). We further held that it would be fundamentally unfair to require the defendant to meet such a burden because "[t]he exact circumstances in the instant case ... cannot be recreated...." *Id.* at 518, 654 A.2d at 1314. Because "[t]he interests of justice simply would not be

served by ordering a limited remand[,]" we held that a new trial was the proper remedy. *Id.*

Grant's case epitomizes our stated concerns in *Mitchell.* The circumstances of Grant's original trial could not be recreated—it is, in fact, the paucity of the record documenting those circumstances that has helped define the grounds for Grant's appeal. As we have discussed above, neither the name of the public defender who allegedly spoke out against Grant, nor the contents of the file consulted by the trial judge, are present in the record. We can think of no dependable mechanism by which the trial court, on remand, could reliably review either the public defender's statements or the OPD file, much less do so more than twenty months after the fact. In light of these facts, the only suitable remedy for the trial court's error is to vacate Grant's conviction, and remand this case for a new trial.

## CONCLUSION

We hold that the trial court abused its discretion by basing its decision to deny Grant a postponement to seek counsel on information wholly outside the trial court's record, thus preventing appellate review of its exercise of discretion. The Court of Special Appeals erred in affirming the judgment of the Circuit Court for Baltimore City. We reverse the judgment below, and remand the case for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO VACATE PETITIONER'S CONVICTIONS AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**