10 A.3d 838

**Lionel Lamont PETERSON**

v.

**STATE of Maryland.**

**No. 0686, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Dec. 28, 2010.

564

Allison P. Brasseaux (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Daniel J. Jawor (Douglas Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: DEBORAH S. EYLER, KEHOE, PAUL E. ALPERT, (Retired, Specially Assigned), JJ.

ALPERT, J.

Following a March 25, 2009 trial, appellant Lionel Lamont Peterson was convicted, by a jury sitting in the Circuit Court

for Wicomico County, of second degree assault, second degree assault on a law enforcement officer, theft under $500, failure to stop at the scene of an accident, failure to return or remain at the scene of an accident, failure of a driver involved in an accident to render reasonable assistance, and failure of a driver involved in an accident to report an injury.[1] On May 13, 2009, the trial court sentenced him to a total of three years in prison.[2] Appellant filed a timely notice of appeal.

Appellant presents three questions for our consideration:

1. Did the trial court fail to comply with the requirements of Rule 4–215?

2. Did the trial court abuse its discretion when it refused to allow Mr. Peterson to call character witnesses and when it refused to allow Mr. Peterson's brother to testify as an alibi witness?

3. Did the trial court commit plain error when it gave an incorrect and misleading instruction on second degree assault of a law enforcement officer?

For the following reasons, finding neither error nor abuse of discretion on the part of the trial court, we affirm the judgments.

## FACTS AND PROCEEDINGS

On July 13, 2008, off-duty Wicomico County Sheriff's Office Lieutenant Robin Roberts and his wife went to a Wal–Mart store to purchase a toaster. As Roberts and his wife entered the store, they heard its anti-theft alarm, and Roberts observed an African–American male, later identified as appel-

---

1. Appellant was acquitted of first degree assault.

2. The three year sentence was imposed on the assault upon a law enforcement officer charge. The simple assault charge was merged therein for sentencing purposes. The court imposed an 18 month concurrent sentence on the theft charge, a 12 month concurrent sentence on the failure to stop at the scene of an accident charge, and no sentence on the remaining charges.

lant's brother, Howard Peterson, running through the lobby while pushing an empty shopping cart.

Roberts watched the man exit the store and proceed to a black Cadillac; upon his arrival at the car, the man unfastened his pants and pulled out a large package of what Roberts believed to be stolen meat. Roberts walked to the car, identified himself as a police officer, and showed the man his credentials. He asked the man to retrieve what he had placed in the car and return to the Wal–Mart store. The man placed the large package of meat in the shopping cart and slammed the cart into Roberts. He then fled toward the Wal–Mart store.

While pushing the shopping cart away, Roberts noticed a second man, whom he identified at trial as appellant, walk around the Cadillac and get into the driver's seat. Placing his hand on the driver's side exterior mirror, Roberts again identified himself as a police officer and advised appellant to stop the vehicle. Appellant said nothing, but he backed the vehicle up, running over Roberts' foot. Roberts advised appellant he was under arrest, but appellant backed up farther and turned the steering wheel to the left, striking Roberts on his left knee and knocking him to the ground.[3] Without alerting police or rendering any assistance to Roberts, appellant exited the Wal–Mart parking lot in the Cadillac.

Salisbury City Police Department Officer Tom Funk was dispatched to the Wal–Mart following a report that someone had struck a law enforcement officer with a vehicle. En route to the Wal–Mart store, Funk saw a vehicle fitting the broadcast description of the suspect vehicle driving in the opposite direction at a high rate of speed. Funk turned around and attempted to stop the vehicle; after reaching speeds of almost 100 miles per hour, Funk caught up to the vehicle and instigated a traffic stop. He observed two African–American

---

**3.** Roberts' injuries, which persisted at least through the time of trial, included the crush injury to his left foot, a cut on his left knee, and pain in his back. His medical records were introduced into evidence at trial.

males in the vehicle and saw one of them reach into the back seat and attempt to cover with a shirt a "very large pile of meat and shrimp."

Upon approaching the driver's side of the vehicle and identifying himself as a police officer, Funk advised that he had stopped the vehicle because it matched the description of a vehicle involved in a suspected crime and because it had been traveling at a high rate of speed. Shortly thereafter, Officer John Dimare arrived at the scene, and the officers separated the two men and read them their *Miranda*[4] rights.

Before Funk could ask the driver, whom he identified at trial as appellant, any questions, appellant told Funk that "he didn't hit no one." When Funk asked him what he meant by that, appellant told him that "some guy at Wal–Mart tried talking to him," but that appellant did not do anything wrong. Appellant told Funk that he believed the man at the Wal–Mart to be a police officer.

After first denying to Funk that he had struck anyone with his vehicle, appellant admitted that Roberts "had made contact with his vehicle" and that he had seen Roberts fall. To Funk, the vehicle's passenger, appellant's brother, Howard Peterson, also admitted to having been at the Wal–Mart and to having had contact with a man he believed to be a police officer.

While interviewing the brothers, Funk was alerted to a report of a theft or shoplifting incident from a Food Lion supermarket in Delmar. After Funk and Dimare reported their observation of packages of meat labeled with Food Lion stickers in the stopped vehicle, another officer transported Debbie Damico, a witness from Food Lion, to the location of the traffic stop; she identified appellant—with "100 percent" certainty—as a suspect in a theft of meat and seafood from the Food Lion store.[5] Appellant was then placed under arrest for assault and theft charges.

---

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** The total value of the stolen items that were located in the back seat of appellant's vehicle was $336.47.

After the State rested its case, appellant, representing himself,[6] called his brother, Howard Peterson, to testify on his behalf. Howard testified that as he exited the Wal–Mart store and proceeded to the Cadillac on the date in question, he saw Roberts "just standing there" by Howard's car. Roberts said he was a police officer and told Howard to "give me what you got." Howard said that in response to Roberts' demand, he went to his car and placed a piece of meat that had come from Food Lion into a shopping cart. Then, Roberts "shot by" him and may have tripped over a concrete pillar, falling to the ground. Appellant then backed up the car. Howard saw Roberts "just sitting" on the ground, and Howard got into the car, which left the area.

The jury found appellant guilty of all charges, save for first degree assault, and he was sentenced, as noted above.

Additional relevant facts will be set forth as necessary.

## DISCUSSION

### I.

As his first assignment of error, appellant contends that the trial court erred, by failing to comply with the mandates of Maryland Rule 4–215, when ruling that appellant waived his right to counsel by inaction and requiring him to go to trial without an attorney. The State disagrees, arguing that the trial court met all the requirements of Rule 4–215 and correctly determined that appellant waived his right to counsel by his own inaction in failing to secure an attorney.

The right to counsel is " 'basic to our adversary system of criminal justice, and . . . is guaranteed by the federal and Maryland constitutions to every defendant in all criminal prosecutions.' " *Grant v. State*, 414 Md. 483, 489, 995 A.2d 975 (2010) (quoting *Parren v. State*, 309 Md. 260, 281–82, 523 A.2d 597 (1987)). To protect the fundamental right to counsel, as

---

6. The circumstances behind appellant's *pro se* status at trial will be discussed below.

well as the correlative right to self-representation, Maryland Rule 4–215[7] was adopted; the Rule, which sets forth the "mechanisms by which a defendant can waive [his] right to counsel, establishes fixed and stringent procedures governing waiver in order to ensure that this right is protected." *Grant*, 414 Md. at 489, 995 A.2d 975. The Rule provides a checklist of requirements to be completed before a judge may consider a defendant's waiver of counsel valid. The requirements of Rule 4–215 are mandatory, and a court's failure to comply

---

7. Md. Rule 4–215 provides, in pertinent part:

 (a) **First appearance in court without counsel.** At the defendant's first appearance in court without counsel, or when the defendant appears in the District Court without counsel, demands a jury trial, and the record does not disclose prior compliance with this section by a judge, the court shall:

 (1) Make certain that the defendant has received a copy of the charging document containing notice as to the right to counsel.

 (2) Inform the defendant of the right to counsel and of the importance of assistance of counsel.

 (3) Advise the defendant of the nature of the charges in the charging document, and the allowable penalties, including mandatory penalties, if any.

 (4) Conduct a waiver inquiry pursuant to section (b) of this Rule if the defendant indicates a desire to waive counsel.

 (5) If trial is to be conducted on a subsequent date, advise the defendant that if the defendant appears for trial without counsel, the court could determine that the defendant waived counsel and proceed to trial with the defendant unrepresented by counsel.

 The clerk shall note compliance with this section in the file or on the docket.

* * *

 (d) **Waiver by inaction—Circuit Court.** If a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial, the court shall permit the defendant to explain the appearance without counsel. If the court finds that there is a meritorious reason for the defendant's appearance without counsel, the court shall continue the action to a later time and advise the defendant that if counsel does not enter an appearance by that time, the action will proceed to trial with the defendant unrepresented by counsel. If the court finds that there is no meritorious reason for the defendant's appearance without counsel, the court may determine that the defendant has waived counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial.

strictly with the Rule constitutes reversible error. *State v. Camper*, 415 Md. 44, 55, 998 A.2d 352 (2010).

 For a criminal defendant to waive his right to counsel effectively, he must " 'knowingly and intelligently' forgo those relinquished benefits." *Brye v. State*, 410 Md. 623, 634, 980 A.2d 435 (2009) (quoting *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Not all waivers of the right to counsel, however, require an affirmative act on the part of a defendant. A defendant may waive his right to counsel through inaction. *Grant*, 414 Md. at 490, 995 A.2d 975.

In the present matter, the trial court implicitly ruled that appellant waived his right to counsel by inaction. Rule 4–215(d) provides that such a waiver may be found

> [i]f a defendant appears in circuit court without counsel on the date set for hearing or trial, indicates a desire to have counsel, and the record shows compliance with section (a) of this Rule, either in a previous appearance in the circuit court or in an appearance in the District Court in a case in which the defendant demanded a jury trial[.]

 Rule 4–215(a), in turn, requires the court to make a series of advisements to a defendant. Finally, the court must determine whether his reasons for appearing in court without an attorney are meritorious. While there is no set inquiry that must precede a trial court's finding of waiver of counsel by inaction, *id.* at 490, 995 A.2d 975, in determining whether the defendant's reason is meritorious, the court's inquiry

> "(1) must be sufficient to permit it to exercise its discretion ... (2) must not ignore information relevant to whether the defendant's inaction constitutes waiver ... and (3) must reflect that the court actually considered the defendant's reasons for appearing without counsel before making a decision."

*Broadwater v. State*, 401 Md. 175, 204, 931 A.2d 1098 (2007) (quoting *McCracken v. State*, 150 Md.App. 330, 356–57, 820 A.2d 593 (2003)). We review a trial court's finding of waiver

under Rule 4–215(d) only for an abuse of discretion. *Grant,* 414 Md. at 491, 995 A.2d 975.

In order to assess whether the trial court abused its discretion in finding that appellant waived his right to counsel through his own inaction, we must examine the sequence of events that ultimately led to appellant's self-representation at his trial. Following a bail review hearing and a preliminary hearing in the district court, appellant first appeared before the circuit court on October 3, 2008. During that brief appearance, the trial judge [8] asked appellant whether he had received a copy of the charging document, and appellant affirmed that he had. The trial judge asked:

> Do you understand that you are charged with first degree assault which carries a maximum penalty of 25 years in prison, second degree assault which carries a maximum penalty of ten years in prison, a $2500 fine or both, second degree assault of a law enforcement officer which carries a maximum penalty of ten years in prison, a $5000 fine or both, theft involving less than $500 which carries a maximum penalty of 18 months in jail, a $500 fine or both, failing to stop at the scene of an accident, two charges of that, I guess one involving personal injury and the other involving property damage, perhaps. The maximum penalty for each of those two offenses is a year in jail, a $3000 fine or both, the charge of being involved in an accident and failing to render assistance, and failure to report the, I guess, bodily injury or death of an attended vehicle, person involved with an attended vehicle. Each of those two offenses carries a maximum penalty of 60 days in jail, a $500 fine or both. Do you understand all of that?
>
> Defendant Peterson: Yes, sir.

The court then advised appellant that he was entitled to be represented by an attorney at every stage of his case and that a lawyer would be of help advising him as to his rights and

---

**8.** All appellant's appearances in the circuit court, including trial and sentencing, were before the same judge, the Honorable Donald C. Davis.

any possible defenses, as well as preparing for trial, hearings, and sentencing. Again, appellant indicated his understanding. The court warned appellant that if he were going to hire a lawyer, the lawyer would be required to file an appearance within the next 15 days. Appellant was told that

> [i]f you cannot afford to hire a lawyer, you can apply to the Public Defender's Office who may be able to provide a lawyer to you without cost to you.
>
> If there is any possibility that you will need assistance from one of the attorneys through the Public Defender's Office, you need to speak with the lady sitting over next to the wall who is from that office. She can set up an appointment or get the process started for you.
>
> \* \* \*
>
> If no one has filed a paper with the Court within the next 15 days indicating that he or she is representing you, we will enter a not guilty plea on your behalf, schedule your case for trial. If you appear for that trial without a lawyer, you could be found to have waived your right to a lawyer and required to represent yourself if the reason you do not have a lawyer at that time is that you failed to make reasonable, timely and good faith efforts to hire a lawyer and because you failed to apply to the Public Defender's Office in a timely fashion.

Again, appellant affirmed his understanding of the court's advice. The court announced itself satisfied that appellant understood what had been explained to him and the consequences for failing to make arrangements for a lawyer. Finally, the court advised appellant that "certain things" needed to be filed within 30 days, so appellant should "make arrangements for an attorney promptly so that you will be able to protect your various rights in that regard."

Appellant's next appearance in court occurred on December 1, 2008. Therein, he requested a continuance because he said he had contacted an attorney but had recently been laid off from, and then rehired to, his job and wanted to make sure he

could pay his lawyer. Although appellant requested a 90 day continuance, the court ruled that 60 days would be sufficient.

On February 4, 2009, appellant again appeared in court, still unrepresented by counsel. Appellant stated that he had again been laid off, and he did not have enough money to retain counsel. Notwithstanding that fact, however, he had not applied to the Office of the Public Defender ("OPD"). He thus asked for more time so he could obtain representation.

The court ordered appellant to go to the OPD and make application for an attorney when he left the courthouse that day. The court postponed the trial for 30 more days and advised appellant that it was "the last postponement you are going to get for a lawyer, so it's you are facing as I have advised you before on one of the charges, you are facing 25 years in prison. There are a number of other charges that are pending against you. So you need to be ready to go with a lawyer." The court further told appellant that in 30 days "you are going to trial whether you have one or not based on what you have told me." Appellant asserted that he would be ready to go with a lawyer or ready to go representing himself.

Appellant's trial was called on March 25, 2009, and appellant again appeared without a lawyer. He told the court that he had gone to the OPD, and they had given him "a paper," but when he went back on the date he had been told, he was turned away because he had not contacted the office more than 10 days prior to trial or brought in required documents.

The court recounted appellant's previous appearances without a lawyer and the postponements given him for the purpose of obtaining representation. The court stated: "I don't believe that you have a meritorious reason not to have a lawyer today, so I'm going to find that you have waived your right to a lawyer, and we will proceed this morning with the trial assuming the State is ready to do so." After appellant stated his apparent concern about his lack of representation, the court reiterated: "I found that you do not have a sufficient reason, a meritorious reason for not having a lawyer today, considering the length of time that's passed, the action that

you have taken, and the actions that you failed to take, so we are proceeding today with the trial.... I understand you may want to have a lawyer, but we are going to proceed today even though you do not have one."

Appellant, in his brief, asserts that the trial court failed to abide by the strict requirements of Rule 4–215 in three ways: 1) In failing adequately to advise appellant of the nature of the charges against him pursuant to Md. Rule 4–215(a)(3); 2) In ignoring information relevant to the waiver determination by failing to inquire in detail what appellant was told at his initial visit to the OPD and to review the written documentation that office had provided him, and; 3) In failing to find the reason appellant gave for not having counsel meritorious. We will address each contention in turn.

█ Appellant notes that he was charged with failing to stop for an accident that resulted in bodily injury, in violation of Md.Code (2009 Repl.Vol.), § 20–102(a)(1) of the Transportation Article ("TR"), and with failing to return and remain at the scene of an accident involving bodily injury, in violation of TR § 20–102(a)(2).[9] At his initial circuit court appearance, the trial court advised appellant that he was charged with "failing to stop at the scene of an accident, two charges of that, I guess one involving personal injury and the other involving property damage, perhaps. The maximum penalty for each of those two offenses is a year in jail, a $3000 fine or both."

Appellant contends that the trial court did not properly advise him of the nature of the charges against him. He argues that although he had been charged with one count each

---

9. TR § 20–102(a) provides:

　(a) *Bodily injury.*—(1) The driver of each vehicle involved in an accident that results in bodily injury to another person immediately shall stop the vehicle as close as possible to the scene of the accident, without obstructing traffic more than necessary.

　(2) The driver of each vehicle involved in an accident that results in bodily injury to another person immediately shall return to and remain at the scene of the accident until the driver has complied with § 20–104 [rendering assistance and providing certain information] of this title.

of failing to stop at the scene of an accident involving bodily injury and failing to return and remain at the scene of an accident involving bodily injury, the trial court, while correctly noting the two charges of failing to stop at the scene of an accident, incorrectly guessed that one involved personal injury and one involved "property damage, perhaps."

Although we are cognizant of the requirement for strict compliance with Rule 4–215(d), in our view, the trial court achieved strict compliance. Rule 4–215(a)(3) requires that a defendant be advised of the "nature of the charges" in the charging document. It does not require a *verbatim* recitation of those charges. The trial court correctly advised appellant of the nature of the charges, *i.e.*, two counts of failing to stop at the scene of an accident, and correctly notified appellant that the potential penalty for each of those counts was one year in jail, a $3000 fine, or both.[10] The purpose of the advisement of the nature of the charges in the charging document and the allowable penalties—to ensure that a defendant is made aware of all pending charges and associated penalties, *Brye*, 410 Md. at 637, 980 A.2d 435—was adequately met by the circuit court's advisement.

Although the court may have mistaken the factual predicate of the two charges, it admitted its uncertainty of the facts of the incident by further characterizing the two charges as, "*I guess* one involving personal injury and the other involving property damage, *perhaps*." (Emphasis added). We are not convinced that the court's parenthetical comments about the factual nature of the charges renders the advisement to appellant insufficient for the purposes of Rule 4–215, considering that the bases of the charges and the potential maximum penalties for those offenses were accurately conveyed to appellant.

---

**10.** TR § 27–101(*o* ) provides, in pertinent part:

"(*o* ) *Violation of § 20–102.*—(1) Any person who is convicted of a violation of § 20–102(a) of this article is subject to a fine of not more than $3,000 or imprisonment for not more than 1 year or both."

Appellant's second and third challenges to the trial court's finding of waiver by inaction center on the court's finding that his reason for appearing in court without an attorney was not meritorious. Therefore, we consider them together.

Once the court has achieved the required advisements in Rule 4–215(a)(3), before ruling that a defendant has waived his right to counsel by inaction, the court must further determine whether the defendant has presented a meritorious reason for his appearance without counsel. In determining whether the defendant's reason is meritorious, the court's inquiry

(1) must be sufficient to permit it to exercise its discretion ... (2) must not ignore information relevant to whether the defendant's inaction constitutes waiver ... and (3) must reflect that the court actually considered the defendant's reasons for appearing without counsel before making a decision.

*Broadwater*, 401 Md. at 204, 931 A.2d 1098. If, pursuant to those mandates, the court finds the defendant does not have a meritorious reason, it may then determine that the defendant has waived his right to counsel by failing or refusing to obtain counsel and may proceed with the hearing or trial. Md. Rule 4–215(d).

In this matter, the trial court found that appellant had no meritorious reason for his failure to retain counsel by the start of the March 25, 2009 trial. Appellant takes issue with that determination, suggesting that the trial court did not permit him to explain adequately his appearance without counsel. Appellant says that the colloquy between him and the court on the first day of trial—in which he indicated he went to the OPD when it became apparent he could not afford to retain outside counsel and they gave him a "paper"—shows that the trial court ignored information relevant to the waiver determination. Appellant contends that it is apparent that he went to the OPD as instructed by the court, and, as such, the court should have asked further questions about that visit and the cutoff date they gave him for applying for counsel because,

if that date were wrong, "his failure to return to the office in a timely manner was certainly excusable." Appellant additionally suggests simply that his reason for not having counsel was not non-meritorious.

As noted above, we review the trial court's ruling on a waiver of counsel by inaction on an abuse of discretion basis. We find nothing in this record to indicate the court abused its discretion in finding that appellant did not have a meritorious reason for his failure to appear at trial without counsel. On the contrary, it appears that the trial court made every effort to ensure that appellant would appear at trial with an attorney, and appellant squandered every opportunity.

When appellant first appeared in the circuit court on October 3, 2008, the court told him that if he were going to retain an attorney, that attorney would be required to file an appearance within 15 days and that if appellant required the services of the OPD, a representative from that office was then in the courtroom to assist him. He was warned that if he appeared at trial without an attorney, he could be found to have waived his right to an attorney. Appellant said he understood these warnings, yet he next appeared in court on December 1, 2008, without counsel, and advised the court that he needed a 90 day continuance to hire a lawyer. The court granted him 60 days.

By February 4, 2009, appellant had still not hired an attorney, complaining that he had been laid off from his job for a second time and that he could not afford to hire outside counsel. Knowing he could not afford a private attorney, however, he had still not made application with the OPD. The court thus ordered him to go to the OPD upon leaving court and make immediate application. Appellant was granted another continuance, this time for 30 days, but the court admonished that he would not get another continuance on the basis of lack of counsel and that he would go to trial on the next scheduled date with or without an attorney.

Appellant appeared at trial on March 25, 2009, without a lawyer, stating that he had gone to the OPD but had been advised he would not receive assistance because he had not

appeared more than the required 10 days before the start of trial nor provided the required paperwork. On the basis of that explanation, and his explanations at his previous court appearances, the court found appellant's reason for failing to have a lawyer non-meritorious.

We cannot say that the trial court abused its discretion in failing to find a meritorious reason for appellant's appearance without counsel. The court's numerous inquiries into, and continuances as a result of, appellant's inaction in retaining counsel were certainly sufficient to permit it to exercise its discretion in determining that his reasons for failing to do so were not meritorious. We are convinced that the trial court did hear all relevant information regarding whether appellant's inaction constituted waiver, and it is apparent that the trial court did actually consider appellant's reasons for appearing without counsel.

*Gray v. State*, 338 Md. 106, 656 A.2d 766 (1995), relied upon by appellant, does not mandate a different outcome. In that matter, Gray was arraigned before the circuit court on January 13, 1993, when he was advised of his right to counsel and told that if he could not afford a lawyer, he should apply to the OPD that very day. *Id.* at 108–109, 656 A.2d 766. Gray next appeared in court before a different judge on April 7, 1993, the scheduled trial date, without a lawyer. He advised the court that, notwithstanding the court's admonition to apply on January 13, 1993, he had not gone to the OPD until March 25, 1993, when he had been told he had missed the deadline to apply, a deadline he had not known existed. *Id.* at 109–110, 656 A.2d 766. When asked why he had waited so long, Gray said he thought he could get the money for a private attorney but found he could not. *Id.* The court found the reason non-meritorious. *Id.*

The Court of Appeals reversed, holding that Gray's explanation for failing to appear with a lawyer was plausible and not, as a matter of law, non-meritorious. *Id.* at 113, 656 A.2d 766. The Court found that the fact that Gray did not go to the OPD immediately after the arraignment, as instructed by the circuit

court, alone and viewed in light of his explanation, did not show that he neglected or refused to obtain counsel. *Id.*

In this matter, appellant appeared before the same judge on three occasions prior to trial, receiving two continuances for the express purpose of obtaining counsel, yet, even after being told he would be required to stand trial without an attorney, he failed to do so. We cannot say, then, as in *Gray,* that the court's only consideration in finding his reason for failing to have counsel at his trial was his failure to go immediately to the OPD after his one pre-trial court appearance, as warned.

The background of this matter is more akin to that in *McCracken v. State,* 150 Md.App. 330, 820 A.2d 593 (2003). There, the judge who ultimately decided that McCracken had waived his right to counsel by inaction was the same one who had previously postponed the case to allow the defendant to obtain new counsel after he discharged his attorney. We concluded:

> The court's statements demonstrate its familiarity with appellant's repeated discharges of counsel and appearances without counsel and its careful consideration of appellant's reason for appearing without counsel on the morning of trial. On more than one occasion, appellant was given a postponement and was advised of the importance of counsel and told that, if he appeared again without counsel, he could be deemed to have waived his right to counsel and required to proceed pro se. Aware of that possibility, appellant provided the court with no specific reason justifying his appearance without counsel, and thus, no further inquiry by the court was necessary in order to comply with subsection (d) [of Rule 4–215].

*Id.* at 359, 820 A.2d 593.

Here, as in *McCracken,* the same judge heard appellant's repeated excuses for his failure to obtain counsel and gave him two continuances for that very purpose, admonishing him on February 9, 2009—more than six weeks before trial—that he would not receive any further continuance for that reason; appellant still failed to apply to the OPD in a timely manner.

The trial court heard all appellant's reasons attempting to justify his failure to retain counsel and was not convinced any of them was meritorious. On this record, we see no basis for concluding that the trial court abused its discretion in finding that appellant had waived his right to counsel by inaction.

## II.

Appellant next contends that the trial court abused its discretion when it refused to permit appellant to call two character witnesses and to permit his brother to testify as an alibi witness to the theft charge. The State argues that the trial court acted within its broad discretion to restrict defense witness testimony.

During jury *voir dire*, the court asked appellant if he anticipated calling any witnesses, and appellant advised that he intended to call his brother, Howard Peterson, as a witness and his other brother, Derek Peterson, and his mother, Bernice Peterson, as character witnesses. After the State rested its case, appellant called Howard Peterson. The State objected to the testimony of Howard and any subsequent witnesses on the ground that it had not received any discovery regarding those witnesses and had first heard about them during that morning's jury selection.

Appellant proffered that Howard would testify, "Probably that it didn't happen the way that they're saying. They are charging me with these charges and to me it's not right. It's just not right." The State added that it believed Howard had an extensive criminal record, which the State had not had the opportunity to examine for impeachment purposes. The State went on to complain that "it's hard to have an alibi witness that hasn't been disclosed to an alibi that hasn't been disclosed for the State to sort of prepare for any alibi in this matter."

The court ruled as follows:

Okay. Well, I'm inclined—your point about, the State's point about failure to disclose is correct, you do have an obligation to disclose prior to the morning of the trial who your witnesses are going to be. But I'm inclined to let your

brother testify but not as to anything, based on what you have told me, not as to Food Lion but as to Wal–Mart. Based on his observations.

While you're here, what other witnesses do you anticipate having?

Appellant reiterated that he intended to call his mother and another brother as character witnesses. The State objected to those witnesses, as well, again on the ground that appellant had failed to disclose the witnesses, and on its belief that none of the charged offenses involved character as an element. The court granted the State's motion with regard to the purported character witnesses but said it would allow Howard Peterson's testimony "relating to anything he observed at Wal–Mart."

While conceding that there is no indication in the record that he disclosed his character witnesses to the State, as required by Md. Rule 4–263, appellant argues that the court abused its discretion in disallowing the character witnesses on the ground of nondisclosure, because the complete disqualification of the witnesses was too drastic a measure in this case. With regard to the testimony of Howard Peterson, appellant alleges the court abused its discretion in declining to allow him to provide an alibi with respect to the Food Lion theft because, although appellant did not articulate it, it was "obvious" that Howard would have testified that appellant was somewhere else at the time of the theft.

In reviewing evidentiary rulings, it is well settled that the trial court generally has "broad discretion in the conduct of trials, and we will not disturb that exercise of discretion unless the court has clearly abused it." *Churchfield v. State,* 137 Md.App. 668, 682, 769 A.2d 313 (2001). The Court of Appeals has defined the abuse of discretion standard as " 'a reasoned decision based on the weighing of various alternatives.' There is an abuse of discretion 'where no reasonable person would take the view adopted by the [trial] court.' " *Metheny v. State,* 359 Md. 576, 604, 755 A.2d 1088 (2000) (quoting *In re Adoption/Guardianship No. 3598,* 347 Md. 295, 312, 701 A.2d 110 (1997)). "Our determination of whether a trial court abused

its discretion 'usually depends on the particular facts of the case [and] the context in which the discretion was exercised.'" *King v. State,* 407 Md. 682, 696, 967 A.2d 790 (2009) (quoting *Myer v. State,* 403 Md. 463, 486, 943 A.2d 615 (2008)). If the trial court's ruling is reasonable, even if we believe it could have gone the other way, we will not disturb the ruling on appeal. *Fontaine v. State,* 134 Md.App. 275, 288, 759 A.2d 1136 (2000).

At the time of appellant's March 2009 trial, Md. Rule 4–263(e) [11] governed the required disclosure by the defendant to the State's Attorney:

(e) **Disclosure by Defense.** Without the necessity of a request, the defense shall provide to the State's Attorney:

\* \* \*

(3) Character Witnesses. As to each defense witness the defense intends to call to testify as to the defendant's veracity or other relevant character trait, the name and, except when the witness declines permission, the address of that witness;

(4) Alibi Witnesses. If the State's Attorney has designated the time, place, and date of the alleged offense, the name and, except when the witness declines permission, the address of each person other than the defendant whom the defense intends to call as a witness to show that the defendant was not present at the time, place, or date designated by the State's Attorney[.]

\* \* \*

(h) **Time for Discovery.** Unless the court orders otherwise:

\* \* \*

---

**11.** As the Court of Appeals noted in *Hutchinson v. State,* 406 Md. 219, 227, n. 1, 958 A.2d 284 (2008), Md. Rule 4–263 was significantly amended, effective July 1, 2008. The Rule has since been amended again, with the new Rule becoming effective on July 1, 2010.

(2) the defense shall make disclosure pursuant to section (e) of this Rule no later than 30 days before the first scheduled trial date.

\* \* \*

(n) **Sanctions.** If at any time during the proceedings the court finds that a party has failed to comply with this Rule or an order issued pursuant to this Rule, the court may order that party to permit the discovery of the matters not previously disclosed, strike the testimony to which the undisclosed matter relates, grant a reasonable continuance, prohibit the party from introducing in evidence the matter not disclosed, grant a mistrial, or enter any other order appropriate under the circumstances. The failure of a party to comply with a discovery obligation in this Rule does not automatically disqualify a witness from testifying. If a motion is filed to disqualify the witness's testimony, disqualification is within the discretion of the court.

To implement the objectives of the Rule, the trial court has the discretion to impose sanctions upon a party who violates the Rule and to determine what those sanctions should be. *Thomas v. State,* 397 Md. 557, 570, 919 A.2d 49 (2007). In imposing sanctions for discovery failures, a trial court has " 'considerable latitude.' " *Warehime v. Dell,* 124 Md.App. 31, 43, 720 A.2d 1196 (1998) (quoting *Miller v. Talbott,* 239 Md. 382, 387, 211 A.2d 741 (1965)). Disqualification of witnesses is a sanction expressly within the discretion of the court. Therefore, we see no abuse on the part of the trial court in excluding the testimony of appellant's alleged character witnesses on the ground of non-disclosure, nor do we find abuse in the trial court's limitation of Howard Peterson's testimony to only the events that occurred at the Wal–Mart, the only information undisputedly within his personal knowledge.

Even assuming, without deciding, that the trial court erred in disqualifying the purported character and alibi witnesses, appellant's claim lacks merit because the error, if any, was harmless. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d

665 (1976) (Error is harmless when a reviewing court, "upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict.").

In light of the evidence against him, we are satisfied, beyond a reasonable doubt, that the court's error, if any, did not influence the verdict. Lieutenant Roberts testified at trial that it was appellant who disregarded his order to stop his vehicle and ran over Roberts' foot. Officer Funk testified that upon pulling appellant's vehicle over, appellant blurted that "he didn't hit no one" but admitted that he had talked to "some guy at Wal–Mart," whom he believed to be a police officer. Appellant admitted to Funk that Roberts had "made contact" with his vehicle and that he had seen Roberts fall in the Wal–Mart parking lot. His brother corroborated the fact that he had seen Roberts sitting in the parking lot while appellant drove the Cadillac away. There was no dispute that appellant left the Wal–Mart without offering any assistance to Roberts.

Although appellant attempted to offer his brother, Howard Peterson, as an alibi witness to the Food Lion theft, Officer Funk noticed packages of Food Lion meat on the back seat of appellant's vehicle when he was pulled over, and witness Debbie Damico identified appellant with 100 percent certainty as a suspect in the crime.

The elements of the charged crimes were shown, and testimony of appellant's good character prior to the date in question would have been irrelevant, especially in light of the fact that, as noted by the State, appellant's character had not been called into question except with regard to his actions at the specific time in question. In addition, appellant was not able to proffer the manner in which Howard Peterson's testimony would have exculpated him from the Food Lion theft, only baldly asserting that Howard would probably testify "that it didn't happen the way that they're saying."

For all these reasons, we cannot say that the trial court's ruling on this issue was unreasonable, and thus, an abuse of its considerable discretion.

## III.

 Finally, appellant alleges that the trial court committed plain error in giving its jury instruction on second degree assault of a law enforcement officer. He contends that while the crime of second degree assault of a law enforcement officer requires proof that a defendant intentionally caused physical injury to the officer, the court's instruction advised the jury it could convict him of that crime if the jury found that he recklessly caused physical injury to the officer. While conceding that he did not object to the instruction as given—thereby failing to preserve the issue for appellate review—he urges that we review the issue under the plain error doctrine. We decline to do so.

Md. Rule 4–325 governs instructions to the jury and states, in pertinent part:

(c) **How given.** The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding. The court may give its instructions orally or, with the consent of the parties, in writing instead of orally. The court need not grant a requested instruction if the matter is fairly covered by instructions actually given.

\* \* \*

(e) **Objection.** No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury. An appellate court, on its own initiative or on the suggestion of a party, may however take cognizance of any plain error in the instructions, material to the rights of the defendant, despite a failure to object.

Rule 4–325(e) makes it clear that a failure to object to the giving or the failure to give a jury instruction at trial ordinarily constitutes a waiver of a claim that the instructions were erroneous. *Morris v. State,* 153 Md.App. 480, 509, 837 A.2d 248 (2003). Appellant, who proceeded at trial on a *pro se* basis, is not exempt from the requirement on that ground. *See Grandison v. State,* 341 Md. 175, 195, 670 A.2d 398 (1995) (A *pro se* defendant is "subject to the same rules regarding reviewability and waiver of questions not raised at trial as one who is represented by counsel.").

The policy behind the preservation rule is clear. The trial court cannot correct errors of which it was not informed. Only if a party takes exception to an error in the jury instruction does the court have the opportunity to correct it. *McMillan v. State,* 181 Md.App. 298, 359, 956 A.2d 716, *cert. granted,* 406 Md. 744, 962 A.2d 370 (2008). Even were we to hold that the instruction as given constituted error, the failure of either party to object precluded the opportunity for the trial judge to revise or explain the instruction before the jury retired for its deliberations. In such an instance, appellate review will not ordinarily be permitted. *Morris,* 153 Md.App. at 509, 837 A.2d 248.

Rule 4–325(e) does grant us " 'plenary discretion to notice plain error material to the rights of a defendant, even if the matter was not raised in the trial court.' " *Brown v. State,* 169 Md.App. 442, 457, 901 A.2d 846 (2006) (quoting *Danna v. State,* 91 Md.App. 443, 450, 605 A.2d 150 (1992)), *cert. denied,* 395 Md. 56, 909 A.2d 259 (2006). In the context of erroneous jury instructions, however, the plain error doctrine has been noticed sparingly. *Conyers v. State,* 354 Md. 132, 171, 729 A.2d 910 (1999). The plain error hurdle, " 'high in all events, nowhere looms larger than in the context of alleged instructional errors.' " *Martin v. State,* 165 Md.App. 189, 198, 885 A.2d 339 (2005) (quoting *U.S. v. Sabetta,* 373 F.3d 75, 80 (1st Cir.2004)), *cert. denied,* 391 Md. 115, 892 A.2d 478 (2006). Indeed, with regard to reviewing alleged error in jury instructions, our appellate courts have been " 'rigorous' in 'adhering steadfastly to the preservation requirement.' " *McMillan,* 181

Md.App. at 358, 956 A.2d 716 (quoting *Morris,* 153 Md.App. at 508, 837 A.2d 248). We see nothing in the record that would require us to deviate from the preservation requirement and undertake the extraordinary step of plain error review of an alleged instructional error.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

